O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KAREN MILDRED PEDREGON,   ) Case No. EDCV 12-0361-JPR
   )
             Plaintiff,  )
   ) MEMORANDUM OPINION AND ORDER
        vs.  ) AFFIRMING THE COMMISSIONER
   )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social  )
Security,[1]  )
   )
        Defendant.  )
   )

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed February 8, 2013, which the Court has taken under submission without oral argument. For the reasons stated

---

[1]    On February 14, 2013, Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court therefore substitutes Colvin for Michael J. Astrue as the proper Respondent.

1

below, the Commissioner's decision is affirmed and this action is dismissed.

**II.   BACKGROUND**

Plaintiff was born on February 7, 1961, and has a 12th-grade education. (Administrative Record ("AR") 37, 123.) She previously worked in membership sales and as a cashier/checker and material handler. (AR 25, 56-57.)

On June 27, 2008, Plaintiff filed an application for DIB. (AR 62, 123-25.) Plaintiff alleged that she had been unable to work since January 23, 2007,[2] because of bilateral plantar fasciitis and neck and back pain. (AR 64, 123.) Her application was denied initially, on September 18, 2008 (AR 62, 64-68), and upon reconsideration, on January 29, 2009 (AR 63, 69-73).

On March 12, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 90-91.) A hearing was held on May 20, 2010, at which Plaintiff, who was represented by counsel, appeared and testified. (AR 32-56.) A vocational expert ("VE") also testified. (AR 55-59.) In a written decision issued on July 12, 2010, the ALJ determined that Plaintiff was not disabled. (AR 19-26.) On July 19, 2010, Plaintiff requested review of the ALJ's decision. (AR 15.) On January 13, 2012, the Appeals Council denied Plaintiff's request for review. (AR 1-5.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings

---

[2]   Plaintiff subsequently amended her alleged disability onset date to March 1, 2008. (AR 53.)

1  and decision should be upheld if they are free of legal error and

2  supported by substantial evidence based on the record as a whole.

3  § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct.

4  1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481 F.3d

5  742, 746 (9th Cir. 2007).  Substantial evidence means such

6  evidence as a reasonable person might accept as adequate to

7  support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter</u>

8  <u>v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

9  a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504

10  F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,

11  882 (9th Cir. 2006)).  To determine whether substantial evidence

12  supports a finding, the reviewing court "must review the

13  administrative record as a whole, weighing both the evidence that

14  supports and the evidence that detracts from the Commissioner's

15  conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

16  1996).  "If the evidence can reasonably support either affirming

17  or reversing," the reviewing court "may not substitute its

18  judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

19  **IV.   THE EVALUATION OF DISABILITY**

20      People are "disabled" for purposes of receiving Social

21  Security benefits if they are unable to engage in any substantial

22  gainful activity owing to a physical or mental impairment that is

23  expected to result in death or which has lasted, or is expected

24  to last, for a continuous period of at least 12 months.  42

25  U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257

26  (9th Cir. 1992).

27      A.   The Five-Step Evaluation Process

28      The ALJ follows a five-step sequential evaluation process in

1  assessing whether a claimant is disabled.  20 C.F.R.

2  § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th

3  Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the

4  Commissioner must determine whether the claimant is currently

5  engaged in substantial gainful activity; if so, the claimant is

6  not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

7  If the claimant is not engaged in substantial gainful activity,

8  the second step requires the Commissioner to determine whether

9  the claimant has a "severe" impairment or combination of

10  impairments significantly limiting his ability to do basic work

11  activities; if not, the claimant is not disabled and the claim

12  must be denied.  § 404.1520(a)(4)(ii).  If the claimant has a

13  "severe" impairment or combination of impairments, the third step

14  requires the Commissioner to determine whether the impairment or

15  combination of impairments meets or equals an impairment in the

16  Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

17  404, Subpart P, Appendix 1; if so, disability is conclusively

18  presumed and benefits are awarded.  § 404.1520(a)(4)(iii).  If

19  the claimant's impairment or combination of impairments does not

20  meet or equal an impairment in the Listing, the fourth step

21  requires the Commissioner to determine whether the claimant has

22  sufficient residual functional capacity ("RFC")[3] to perform his

23  past work; if so, the claimant is not disabled and the claim must

24  be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of

25  proving that he is unable to perform past relevant work.  Drouin,

26

27      [3]   RFC is what a claimant can still do despite existing
28  exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
    see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  § 404.1520(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  § 404.1520; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 1, 2008, her amended alleged onset date.  (AR 21.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of "history of bilateral plantar fasciitis; and degenerative disk disease of the cervical spine, status post fusion."  (<u>Id.</u> (citation omitted).)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listings, focusing specifically on Listing 1.00.  (AR 21-22.)  At step four, the ALJ found that Plaintiff retained the RFC to perform light work[4] but was limited to "occasionally performing postural

_____

[4]   "Light work" is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." <u>Id.</u>  A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve

activities; no ladders, ropes or scaffolds; occasional over shoulder/over head reaching bilaterally; no unprotected heights; no dangerous machinery; and she must avoid extreme cold and vibration." (AR 22.) Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work in membership sales and as a cashier. (AR 25.) Accordingly, the ALJ determined that Plaintiff was not disabled without reaching step five of the evaluation process. (AR 26.)

## V.   RELEVANT FACTS

Plaintiff underwent two surgeries to treat her plantar fasciitis, in 1999 and 2000, and continued to work on modified duty for several years after the surgeries. (AR 417, 454.) Her symptoms increased in 2007, and she received a series of off-work orders from her treating podiatrist, Dr. Glenn Ocker, between January 2007 and January 2008. (AR 180-81, 185, 189, 192, 196, 198-206, 208-09.) At the hearing, Plaintiff testified that between January 2007 and March 1, 2008, her alleged onset date, she would have been able to work in a "seated job." (AR 40.)

In March 2008, Plaintiff began experiencing neck pain and was initially treated with pain medication and physical therapy. (AR 303-06, 419-21.) On April 21, 2008, Plaintiff was evaluated by Dr. Sachin Patel for right shoulder pain, and he treated her with a cortisone injection. (AR 423-24.) On May 7, 2008, Plaintiff reported to Dr. Patel that her shoulder impingement was "1000 times better after the cortisone injection." (AR 422.) Dr. Patel was "happy with her progress" and opined that Plaintiff

---

occasional walking or standing. § 404.1567(a)-(b).

might need another cortisone injection in the future if her
symptoms recurred.  (Id.)

On July 18, 2008, an MRI of Plaintiff's cervical spine
revealed mild to moderate central canal stenosis and severe right
neural foramina stenosis at C4-5 secondary to a six-millimeter
right paracentral disc herniation/extrusion; minimal to mild
central canal stenosis and minimal to mild left neural foraminal
stenosis at C5-6 secondary to a three-millimeter left paracentral
broad-based disc protrusion; and minimal central canal stenosis
at C3-4 secondary to a two-millimeter bulging of the disc.  (AR
338-39.)  Plaintiff continued conservative treatment for her neck
pain for approximately six months, but her symptoms did not
improve.  (AR 334.)  As a result, on October 21, 2008, Plaintiff
underwent an anterior cervical discectomy, arthrodesis or spinal
fusion, and the insertion of titanium plates at C4-5 performed by
Dr. Jose Rodriguez, Plaintiff's treating neurosurgeon.  (AR 329-
31.)  On November 4, 2008, Plaintiff reported that her neck pain
had improved since surgery.  (AR 332.)  She had limited range of
motion in her right shoulder secondary to pain, with weakness in
the biceps but normal triceps function.  (Id.)

On November 24, 2008, x-rays showed straightening of
Plaintiff's cervical spine, a plate and multiple screws through
C4-5 with bone dowel, status post-spinal fusion, mild
degenerative changes at C5-6 and C6-7, and mild levoscoliosis of
the cervical spine; the rest of the bones appeared unremarkable.
(AR 341.)  Following surgery, Plaintiff continued conservative
treatment with Dr. Rodriguez, including physical therapy and pain
medications.  (AR 380-89, 392-93.)

On September 18, 2008, consulting physician R. Bitonte reviewed Plaintiff's medical records and completed a physical RFC assessment; he opined that Plaintiff was capable of performing light work except that she could only occasionally climb, stoop, kneel, crouch, or crawl, and she should never balance. (AR 320-26.) Moreover, Dr. Bitonte stated that Plaintiff's ability to reach was limited and she should avoid concentrated exposure to extreme cold, vibration, fumes, and hazards. (AR 322-23.) Dr. Bitonte's findings were affirmed by consulting physician S. Laiken on January 27, 2009. (AR 363-64.)

On January 12, 2010, Plaintiff was examined by consulting orthopedist Dr. Bunsri Sophon. (AR 367-72.) Dr. Sophon found that Plaintiff was obese but not in any acute distress; her posture and gait were normal; and examination of her cervical spine revealed "a well-healed non-tender 4 cm right transverse surgical scar on the neck" and no evidence of tenderness or muscle spasm, with 30/70-degree flexion, 30/60-degree extension, 20/45-degree lateral bending bilaterally, and 45/80-degree rotation bilaterally. (AR 369-70.) Further, her thoracic and lumbar spine showed no evidence of tenderness or muscle spasm, with 60/90-degree flexion, 25/30-degree extension, and 25/25-degree lateral bending bilaterally; her straight-leg-raising test was normal; her upper and lower extremities were all normal, with no decreased range of motion and no deformity, swelling, palpable mass, inflamation, or tenderness; and her neurological examination and motor strength were normal. (AR 370-71.) Dr. Sophon diagnosed Plaintiff with lumbosacral strain and cervical disc disease, status post-C4-5 spinal fusion. (AR 372.)

Finally, Dr. Sophon concluded that Plaintiff was "capable of lifting and carrying 50 pounds occasionally, 20 pounds frequently," and "is restricted to sitting, standing and walking 6 hours out of an 8-hour workday." (Id.)

On February 1, 2010, Dr. Rodriguez reported that Plaintiff was in good spirits and her cervical spine had full range of motion. (AR 378-79.) She still experienced some pain, but it was reduced by physical therapy, massage, and the application of heat and ice. (AR 378.) Dr. Rodriguez compared an MRI done on December 9, 2009, to her old MRI and noted resolution of her previous herniated disc at C4-5. (AR 379.) He also noted his belief that Plaintiff had a right paracentral disc herniation at C5-6 and a small disc protrusion at C3-4. (Id.) On April 5, 2010, Plaintiff reported that on a scale of one to 10, her pain was a four. (AR 376.) The range of motion of her cervical spine had some limitations, but she had full range of motion in her right shoulder girdle. (Id.) Dr. Rodriguez opined that no further surgery was recommended and Plaintiff should continue with conservative care. (AR 377.)

On April 19, 2010, Dr. William Landrey, Plaintiff's treating podiatrist, noted that x-rays of Plaintiff's feet were positive for both plantar calcaneal spurs and posterior spurs; an excessive amount of pronation was evident on the right; and the talus was anteriorly displaced as well as excessively closer to the median plane of the body than normal compared to the calcaneus. (AR 455.) The same day, Dr. Landrey completed a Medical Statement Regarding Foot Problem for Social Security Disability Claim, on which he noted that Plaintiff had had

"painful feet" for over 10 years and had been diagnosed with plantar fasciitis, achilles tendonitis, and heel spurs. (AR 456.) He opined that Plaintiff could stand or walk for less than 90 minutes in an eight-hour day for up to 30 minutes at a time and that she needed to elevate her legs occasionally in the morning and most of the time in the afternoon. (AR 456-57.) Moreover, she could sit for up to two hours in an eight-hour day and had to be able to walk around every hour during the day for about 15 minutes at a time. (AR 457.) Dr. Landrey also indicated that Plaintiff would be unable to walk one block at a reasonable pace on uneven or unstable ground and had mild foot pain that increased to severe with prolonged weight-bearing. (Id.) Additionally, Plaintiff needed 15-minute breaks every hour during an eight-hour workday and could lift 10 pounds occasionally and 20 pounds rarely. (Id.) Dr. Landrey further opined that Plaintiff could rarely twist, stoop, or crouch but should never climb ladders or stairs. (AR 458.) Finally, he stated that Plaintiff would likely have good days and bad days and miss more than four days a month because of her impairments. (Id.)

On April 23, 2010, four days after Dr. Landrey had filled out his medical statement, Dr. David Tran, who had been treating Plaintiff for about a year (AR 44), completed a Physical Residual Functional Capacity Questionnaire and indicated that Plaintiff had had neck pain since October 2008, low-back pain since 2001, and bilateral plantar fasciitis since 1998. (AR 460-64.) He stated that Plaintiff's diagnoses included neck pain with cervical radiculopathy, chronic low-back pain, bilateral plantar

fasciitis, depression, and anxiety.  (AR 460.)  Dr. Tran opined
that Plaintiff's prognosis was poor and noted that she
experienced symptoms of chronic pain in her neck, low back, and
feet, as well as headaches, dizziness, and fatigue.  (<u>Id.</u>)  He
also stated that Plaintiff's treatment had consisted of
medications, and psychological symptoms affecting her physical
condition included depression, anxiety, personality disorder, and
sleep deprivation.  (AR 460-61.)  Moreover, Dr. Tran opined that
Plaintiff frequently experienced pain that would interfere with
her attention and concentration and was incapable of performing
even a low-stress job because stress triggered her pain and
headaches.  (AR 461.)  He explained that Plaintiff could sit or
stand for 15 minutes at a time; sit, stand, or walk for up to two
hours in an eight-hour workday; and rarely lift and carry less
than ten pounds.  (AR 461-62.)  In addition, Dr. Tran stated that
Plaintiff could rarely look down, occasionally turn her head
right or left and look up, and frequently hold her head in a
static position.  (AR 463.)  He also provided that she could
rarely twist, stoop, or crouch, never climb ladders, and
occasionally climb stairs.  (<u>Id.</u>)  Finally, for several of the
questions on the form regarding Plaintiff's specific functional
limitations, Dr. Tran simply wrote, "unable to work now."  (AR
462-63.)

        In his decision, the ALJ gave "limited weight" to the
opinions of Drs. Landrey and Tran because both opinions were (1)
"unsupported" by any treatment notes; (2) "not supported by the
objective medical evidence"; (3) "inconsistent with one another
despite being opined days apart"; (4) "inconsistent with the

claimant's activities of daily living and her reports of reduced

pain"; (5) "not consistent with the opinion that only

conservative care is needed"; and (6) "inconsistent with findings

of Dr. Sophon who examined the claimant three months earlier."

(AR 24.)   The ALJ also found that neither doctor specialized in

psychology and that there was no evidence of a medically

determinable mental impairment.   (<u>Id.</u>)   The ALJ gave "great

weight" to Dr. Sophon's opinion because he "had the opportunity

to examine the claimant, reviewed some of her records, and is a

qualified expert in the field in which his opinions are based

upon."   (AR 25.)   The ALJ also gave "great weight" to the

reviewing nonexamining physicians' opinions because they

"reviewed the claimant's records and are familiar with the

[Social Security Administration's] rules and regulations."   (<u>Id.</u>)

**VI.   DISCUSSION**

     Plaintiff alleges that the ALJ erred by (1) failing to

consider the severity of Plaintiff's anxiety, depression, weight,

right-shoulder impingement, and lower-back injury with disc

damage; (2) failing to properly assess whether her condition met

or equaled a Listing; (3) determining Plaintiff could perform her

past relevant work; (4) failing to consider all the relevant

factors in assessing Plaintiff's RFC; (5) failing to consider

whether Plaintiff was disabled under the Medical-Vocational

Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2; and (6)

finding that Plaintiff's subjective allegations were not fully

credible.   (J. Stip. at 3-4, 10-12, 17-20, 22-24, 33-36, 38, 44-

1  45.)  None of these contentions warrant reversal.[5]

2        A. The ALJ Did Not Err in Determining Plaintiff's RFC

3        Plaintiff contends that the ALJ erred in determining that

4  she retained the RFC to perform a limited range of light work.

5  (J. Stip. at 22-24, 33-34.)  Specifically, Plaintiff argues that

6  the ALJ erred by (1) failing to account for "the fact [Plaintiff]

7  had to take leave from work prior to her alleged onset date" (J.

8  Stip. at 23), (2) rejecting the opinions of her treating

9  physicians, Drs. Landrey and Tran (J. Stip. at 24, 33-34), and

10  (3) "neglecting to consider testimony from the [VE] that

11  supported a finding of 'disabled'" (J. Stip. at 24).

12        1.  Applicable law

13        A district court must uphold an ALJ's RFC assessment when

14  the ALJ has applied the proper legal standard and substantial

15  evidence in the record as a whole supports the decision.  Bayliss

16  v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must

17  have considered all the medical evidence in the record and

18  "explain in [his or her] decision the weight given to . . . [the]

19  opinions from treating sources, nontreating sources, and other

20  nonexamining sources."  20 C.F.R. § 404.1527(e)(2)(ii).  In

21  making an RFC determination, the ALJ may consider those

22  limitations for which there is support in the record and need not

23  consider properly rejected evidence or subjective complaints.

24  See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190,

25  1197-98 (9th Cir. 2004) ("ALJ was not required to incorporate

26

27        [5]    The Court has rearranged the order in which it addresses
28  Plaintiff's claims from that followed by the parties, to avoid
   repetition and for other reasons.

1  evidence from the opinions of the claimant's treating physicians,
2  which were permissibly discounted"); <u>Bayliss</u>, 427 F.3d at 1217
3  (upholding ALJ's RFC determination because "the ALJ took into
4  account those limitations for which there was record support that
5  did not depend on [claimant's] subjective complaints").

6      An ALJ does not need to adopt any specific medical source's
7  RFC opinion as his or her own.  <u>Vertigan v. Halter</u>, 260 F.3d
8  1044, 1049 (9th Cir. 2001) ("It is clear that it is the
9  responsibility of the ALJ, not the claimant's physician, to
10 determine residual functional capacity."); 20 C.F.R.
11 § 404.1546(c) ("[T]he administrative law judge . . . is
12 responsible for assessing your residual functional capacity.").
13 "The ALJ need not accept the opinion of any physician, including
14 a treating physician, if that opinion is brief, conclusory, and
15 inadequately supported by clinical findings."  <u>Thomas v.</u>
16 <u>Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Batson</u>, 359
17 F.3d at 1195.  The Court must consider the ALJ's decision in the
18 context of "the entire record as a whole," and if the "evidence
19 is susceptible to more than one rational interpretation, the
20 ALJ's decision should be upheld."  <u>Ryan v. Comm'r of Soc. Sec.</u>,
21 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks
22 omitted).

23          2.  <u>Discussion</u>

24     The ALJ found that Plaintiff retained the RFC to perform
25 less than a full range of light work.  (AR 22.)  Specifically,
26 the ALJ determined that Plaintiff "is limited to lifting/carrying
27 10 pounds frequently, 20 pounds occasionally; sitting without
28 restrictions but with normal breaks; standing and walking 6 hours

in an 8 hour workday, with appropriate breaks; occasionally performing postural activities; no ladders, ropes or scaffolds; occasional over shoulder/over head reaching bilaterally; no unprotected heights; no dangerous machinery; and she must avoid extreme cold and vibration." (Id.) He further stated that in making that RFC finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered opinion evidence." (Id.)

Plaintiff argues that the ALJ erred in his RFC finding because he did not properly consider that Plaintiff was off work prior to her alleged onset date. (J. Stip. at 23.) The ALJ, however, explicitly considered medical evidence prior to Plaintiff's alleged onset date. (AR 23.) In particular, the ALJ considered evidence that Plaintiff became unable to work in January 2007 and received a series of off-work orders between January 2007 and January 2008. (Id.) Although a portion of Plaintiff's testimony seems to indicate that she was off work a year prior to January 2007 (AR 45), she later clarified that she officially left her job in January 2008 and had not been working for a year prior. (AR 53.) This is confirmed by the record evidence discussed above regarding Plaintiff's off-work orders. (See AR 179-209.)

Additionally, the ALJ properly considered Plaintiff's testimony that she could have worked in a "seated job" between January 2007 and March 2008, when her neck impairment began. (AR 40, 45.) Indeed, following this discussion with the ALJ, Plaintiff and her counsel amended Plaintiff's alleged onset date

to March 2008 because Plaintiff conceded that she could have performed full-time work prior to that date.  (AR 53.)  Thus, the ALJ properly considered the evidence that Plaintiff was off work prior to her alleged onset date.  Plaintiff is not entitled to reversal on this basis.

Plaintiff further contends that the ALJ's RFC finding was improper because it did not reflect the findings of her treating doctors, Drs. Landrey and Tran. (J. Stip. at 23-24, 33-34.)

Three types of physicians may offer opinions in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." Lester, 81 F.3d at 830.  The opinions of treating physicians are generally afforded more weight than those of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record.  20 C.F.R. § 404.1527(c)(2).  If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with other substantial evidence from the record, it should be given controlling weight and should be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830; 20 C.F.R. § 404.1527(c)(2).  When a treating physician's opinion conflicts with other medical evidence or was not supported by

16

1  clinical or laboratory findings, the ALJ must provide only
2  "specific and legitimate reasons" for discounting that doctor's
3  opinion.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).
4  Factors relevant to the evaluation of a treating physician's
5  opinion include the "[l]ength of the treatment relationship and
6  the frequency of examination" and the "[n]ature and extent of the
7  treatment relationship."  20 C.F.R. § 404.1527(c)(2)(i)-(ii).

8      The ALJ provided specific and legitimate reasons for
9  discounting the opinions of Drs. Landrey and Tran.[6]  First, apart
10 from the checklist-style questionnaires both doctors submitted,
11 the record contains only two treatment notes from Dr. Landrey, in
12 April 2010 (AR 454-55), and no records from Dr. Tran.  One of the
13 notes from Dr. Landrey contained no treatment observations, only
14 plaintiff's complaints.  (AR 454.)  As a result, the ALJ properly
15 rejected both opinions on the basis that they were "unsupported."
16 (AR 24); <u>Batson</u>, 359 F.3d at 1194-95 (holding that treating
17 physicians' conflicting, checklist-form opinions were entitled to
18 minimal weight).

19     Second, the ALJ properly rejected the opinions on the basis
20 that they were not supported by the objective medical evidence.
21 (AR 24.)  For example, Plaintiff's treatment records indicated
22 that her neck pain improved after her surgery, and post-surgery
23 diagnostic testing showed that her cervical spine had
24 straightened and only mild degenerative changes at the C5-6 and

25

26

27     [6]    Because they conflicted with the opinions of the state-
   agency physicians, the ALJ needed to provide only "specific and
28 legitimate" reasons for rejecting them.  <u>See</u> <u>Carmickle v. Comm'r,</u>
   <u>Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008).

C6-7 levels remained.  (AR 341, 382, 386, 402.)  The evidence
also shows that while Plaintiff complained of right-shoulder pain
in 2008, it improved after a cortisone shot, and she did not
complain of any shoulder pain or exhibit reduced range of motion
in her 2010 consultative exam.  (AR 367, 370, 422.)  It is also
clear from the record that Plaintiff's plantar fasciitis had
improved by January 2008; during her 2010 consultative exam, she
did not complain of foot pain and her feet were "normal."  (AR
179-209, 367-71.)

Third, the ALJ also properly gave the opinions less weight
because they were inconsistent with each other despite being
offered days apart.  (AR 24); see 20 C.F.R. § 404.1527(d)(4)
(explaining that more weight should be afforded to medical
opinions that are consistent with the record as a whole).  For
example, Dr. Landrey opined that Plaintiff could stand for 30
minutes at a time and Dr. Tran stated she could stand for only 15
minutes (AR 456, 462); Dr. Tran opined that she could never lift
or carry more than 10 pounds and Dr. Landrey stated she could do
so occasionally (AR 457, 462); and Dr. Tran indicated that
Plaintiff could not even walk one block, but Dr. Landrey opined
that she needed to walk for 15 minutes every hour (AR 457, 461).

Fourth, the ALJ properly concluded that the opinions were
inconsistent with Plaintiff's reported daily activities.  (AR
24.)  Plaintiff testified that she was able to drive; take care
of her six-year-old granddaughter, of whom she had sole custody;
and occasionally grocery shop, cook, attend church, and read the
Bible for three hours a day.  (AR 37-38, 47-51.)  The ALJ was
entitled to determine that the ability to perform these

1  activities was inconsistent with the opinions of Drs. Landrey and
2  Tran that, for example, Plaintiff could not walk, stand, or sit
3  for any extended period of time.  (AR 454-64.)

4      Fifth, the ALJ properly found that the opinions of Drs.
5  Landrey and Tran were inconsistent with the conservative
6  treatment recommended for Plaintiff's neck and feet.  (AR 24);
7  see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)
8  (holding ALJ properly rejected opinion of treating physician who
9  prescribed conservative treatment yet opined that claimant was
10 disabled).  For example, following her neck surgery, Plaintiff
11 was prescribed pain medication and physical therapy, and in April
12 2010, her treating neurologist, Dr. Rodriguez, opined that no
13 further surgery was recommended and Plaintiff should continue
14 with conservative treatment as needed for her pain.  (AR 376-81,
15 383, 385, 387, 393.)  Additionally, as discussed above,
16 Plaintiff's plantar fasciitis improved by January 2008.  (AR 179-
17 209.)

18     Sixth, the ALJ was entitled to credit the opinion of Dr.
19 Sophon instead of Drs. Landrey and Tran because his opinion was
20 supported by independent clinical findings and thus constituted
21 substantial evidence upon which the ALJ could properly rely.  See
22 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001);
23 Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr.
24 Sophon reviewed Plaintiff's medical records and conducted a
25 complete orthopedic examination of Plaintiff.  (AR 367-73.)  The
26 ALJ also properly relied on the fact that the opinions of Drs.
27 Landrey and Tran conflicted with the opinions of nonexamining
28 physicians Drs. Bitonte and Laiken.  (AR 25, 320-36, 363-66); see

1  Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-
2  examining physicians may also serve as substantial evidence when
3  . . . consistent with independent clinical findings or other
4  evidence."). Moreover, any conflict in the properly supported
5  medical-opinion evidence was the sole province of the ALJ to
6  resolve. See Andrews, 53 F.3d at 1041.

7      The ALJ also properly rejected Dr. Tran's opinion that
8  Plaintiff's psychological condition affected her physical
9  condition and that she was incapable of even low-stress jobs
10 because Dr. Tran was not a specialist in psychology and because
11 no evidence existed in the record that Plaintiff alleged having a
12 mental impairment or received any mental health treatment. (AR
13 24, 461); see 20 C.F.R. § 404.1527(c)(5) ("We generally give more
14 weight to the opinion of a specialist about medical issues
15 related to his or her area of specialty than to the opinion of a
16 source who is not a specialist.").

17     Finally, Plaintiff argues that the ALJ erred in his RFC
18 assessment because he did not consider the VE's testimony that
19 supported a finding of disability. (J. Stip. at 24.) The VE
20 testimony cited by Plaintiff, however, refers to hypotheticals
21 posed to the VE that contained limitations opined by Drs. Landrey
22 and Tran that, as discussed above, were properly rejected by the
23 ALJ and thus not required to be included in Plaintiff's RFC.
24 (See AR 58-59); Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th
25 Cir. 2001) ("Nor was the ALJ bound to accept as true the
26 restrictions set forth in the second hypothetical question if
27 they were not supported by substantial evidence. An ALJ is free
28 to accept or reject restrictions in a hypothetical question that

1  are not supported by substantial evidence."); <u>Rollins</u>, 261 F.3d

2  at 857 ("[B]ecause the ALJ included all of the limitations that

3  he found to exist, and because his findings were supported by

4  substantial evidence, the ALJ did not err in omitting the other

5  limitations that Rollins had claimed, but had failed to

6  prove.").[7]

7       In sum, the ALJ's RFC assessment was supported by

8  substantial evidence, and Plaintiff is not entitled to reversal

9  on this claim.

10      B.   <u>The ALJ Did Not Err in His Step-Two Analysis</u>

11      Plaintiff contends that the ALJ erred in his step-two

12  assessment by failing to consider the severity of Plaintiff's

13  lower-back injury with disc damage, right-shoulder impingement,

14  weight, anxiety, and depression.  (J. Stip. at 3-4, 10-12.)

15  Reversal is not warranted on this basis because substantial

16  _____

17      [7]    Elsewhere, Plaintiff makes the similar argument that the
    ALJ erred in his step-four determination because "the portion of
18  the [VE] testimony that limited Plaintiff to standing and walking
    no more than two hours in an eight hour day should have been
19  considered more thoroughly."  (J. Stip. at 22; <u>see also</u> <u>id.</u> at 17-
    20.)   Plaintiff also implies that limitations related to her
20  alleged mental impairment should have been considered.  (<u>Id.</u>)
    These limitations, however, were opined by Drs. Landrey and Tran
21  (AR 457, 462), and, as discussed above, because the ALJ properly
    rejected both of those opinions, he was not required to consider
22  them in his RFC assessment.  <u>See</u> <u>Batson</u>, 359 F.3d at 1197.  It was
    Plaintiff's burden at step four to prove that she is unable to
23  return to her past relevant work, and she failed to do so.  <u>See</u>
    <u>Pinto v. Massanari</u>, 249 F.3d 840, 845 (9th Cir. 2001).  In making
24  his step-four determination, the ALJ properly relied on the VE's
    testimony that a hypothetical person with Plaintiff's RFC could
25  perform Plaintiff's past relevant work.  (AR 25); <u>see</u> <u>Bayliss</u>, 427
26  F.3d at 1218 ("A VE's recognized expertise provides the necessary
    foundation for his or her testimony," and "no additional foundation
27  is required").  Therefore, Plaintiff is not entitled to reversal on
    this basis.
28

1 evidence in the record supports the ALJ's step-two determination.

2     At step two of the sequential evaluation process, a

3 plaintiff has the burden to present evidence of medical signs,

4 symptoms, and laboratory findings that establish a medically

5 determinable physical or mental impairment that is severe and can

6 be expected to result in death or last for a continuous period of

7 at least 12 months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05

8 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D));[8]

9 see 20 C.F.R. §§ 404.1520, 404.1509. Substantial evidence

10 supports an ALJ's determination that a claimant is not disabled

11 at step two when "there are no medical signs or laboratory

12 findings to substantiate the existence of a medically

13 determinable physical or mental impairment." Ukolov, 420 F.3d at

14 1004-05 (citing SSR 96-4p). An impairment may never be found on

15 the basis of the claimant's subjective symptoms alone. Id. at

16 1005.

17     Step two is "a de minimis screening device [used] to dispose

18 of groundless claims." Smolen, 80 F.3d at 1290. Applying the

19 applicable standard of review to the requirements of step two, a

20 court must determine whether an ALJ had substantial evidence to

21 find that the medical evidence clearly established that the

22 claimant did not have a medically severe impairment or

23 combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687

24 (9th Cir. 2005); see also Yuckert v. Bowen, 841 F.2d 303, 306

25 (9th Cir. 1988) ("Despite the deference usually accorded to the

26

27     [8]   A "medical sign" is "an anatomical, physiological, or
28 psychological abnormality that can be shown by medically acceptable
clinical diagnostic techniques." Ukolov, 420 F.3d at 1005.

1   Secretary's application of regulations, numerous appellate courts

2   have imposed a narrow construction upon the severity regulation

3   applied here."). An impairment or combination of impairments is

4   "not severe" if the evidence established only a slight

5   abnormality that had "no more than a minimal effect on an

6   individual's ability to work." Webb, 433 F.3d at 686 (citation

7   omitted).

8               1.   Depression and anxiety

9        Plaintiff failed to meet her burden to present evidence of

10  medical signs, symptoms, and laboratory findings that establish

11  that her alleged depression and anxiety constituted medically

12  determinable mental impairments. See 20 C.F.R. § 404.1508 ("A

13  physical or mental impairment must be established by medical

14  evidence consisting of signs, symptoms, and laboratory findings,

15  not only by your statement of symptoms."). The only evidence

16  Plaintiff cites in support of her contention that the ALJ failed

17  to properly consider the severity of her depression and anxiety

18  is Dr. Tran's statement in his physical RFC questionnaire that

19  Plaintiff had been prescribed antidepressant and anxiety

20  medications. (J. Stip. at 4, 12.) Apart from this brief

21  reference, the record is devoid of any mental-health treatment

22  notes or functional limitations opined by any medical

23  professional resulting from Plaintiff's depression or anxiety.

24  Thus, the logical inference is that even if Plaintiff did suffer

25  from depression and anxiety, any symptoms were adequately

26  controlled with medication. See 20 C.F.R. § 404.1529(c)(3)(iv)

27  (ALJ may consider effectiveness of medication in evaluating

28  severity and limiting effects of impairment); Warre v. Comm'r of

23

1   Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)

2   ("Impairments that can be controlled effectively with medication

3   are not disabling for the purpose of determining eligibility for

4   [Social Security] benefits."). Further, Plaintiff testified that

5   the only impairments affecting her ability to work were related

6   to her feet and neck; she never mentioned any symptoms resulting

7   from depression or anxiety. (AR 32-56.) Accordingly,

8   substantial evidence supports the ALJ's determination that

9   Plaintiff's depression and anxiety did not constitute medically

10  determinable impairments. (AR 24); see Ukolov, 420 F.3d at 1004-

11  05.

12              2.   Obesity

13       As a general rule, an ALJ must determine the effect of a

14  claimant's obesity upon her other impairments and ability to

15  work. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003); see

16  also SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (requiring an

17  ALJ to consider the effects of obesity at several points in the

18  five-step sequential evaluation). An ALJ must "evaluate each

19  case based on the information in the case record," as obesity may

20  or may not increase the severity or functional limitations of

21  other impairments. SSR 02-1p, 2002 WL 34686281, at *6.

22       A review of the record reveals that in the proceedings

23  before the Commissioner, neither Plaintiff nor her attorney ever

24  claimed obesity constituted a disabling impairment or otherwise

25  resulted in any functional limitations. Rather, Plaintiff

26  claimed to be disabled as a result of neck and foot impairments,

27  and the ALJ found, at step two, that Plaintiff has severe neck

28  and foot impairments. (AR 21, 64, 69.) Plaintiff presented no

                          24

evidence that her obesity exacerbated her other impairments, limited her functioning, or impaired her ability to work, whether alone or in combination with her other alleged impairments.  The only medical evidence concerning Plaintiff's obesity was a statement from Dr. Sophon that Plaintiff was obese and an April 5, 2005 treatment note indicating that Plaintiff's complaints of foot pain might be related to her weight; but neither Dr. Sophon nor any other doctor ever discussed any limitations resulting from her obesity.  (AR 214, 369.)  Given the lack of any medical evidence that Plaintiff's obesity exacerbated her impairments or resulted in any functional limitation, as well as the failure of Plaintiff, who was represented by counsel, to claim to be disabled based on obesity, whether as an impairment or a source of functional limitations, the ALJ's failure to address Plaintiff's obesity at step two does not require reversal.  See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (finding no reversible error, notwithstanding ALJ's failure to consider obesity at step two, because, as in this case, there was little evidence that plaintiff's obesity exacerbated other impairments and plaintiff was represented by counsel).

                    3.   Shoulder and back impairments

     Even assuming there is sufficient evidence in the record to show that Plaintiff suffered from right-shoulder impingement and a lower-back injury, the existence of either of these conditions alone did not constitute a severe impairment if it did not prevent Plaintiff from working.  See 20 C.F.R. § 404.1520(c) (severe impairment is one that "significantly limits [claimant's] physical or mental ability to do basic work activities").

1   Substantial evidence supports the ALJ's finding that Plaintiff's
2   right-shoulder and low-back pain were not severe.  With respect
3   to the right shoulder, as the ALJ noted, while Plaintiff
4   presented with right-shoulder pain in April 2008, by May 2008 she
5   reported feeling "1000 times better after the cortisone
6   injection."  (AR 23, 423-24, 428.)  There is no evidence in the
7   record that Plaintiff required further treatment for her right
8   shoulder or that any pain was not adequately controlled with
9   medication.  Moreover, regarding her low-back injury, while
10  Plaintiff reported injuring her lower back in a fall in 1990, she
11  continued to work until 2007.  (AR 367); <u>Osenbrock</u>, 240 F.3d at
12  1165-66 (ALJ properly considered fact that plaintiff worked six
13  years after injury in determining his functional capacity).  As
14  discussed above, at the hearing Plaintiff testified that the only
15  impairments limiting her ability to work resulted from her neck
16  and feet issues.  (AR 32-56.)  Indeed, even Plaintiff's counsel
17  conceded at the hearing that Plaintiff was "not really mentioning
18  the back although there were some complaints of it[.]"  (AR 60.)
19  Finally, Plaintiff fails to cite any medical opinions containing
20  functional limitations resulting from her right-shoulder or
21  lower-back injuries.  Based on the aforementioned evidence, the
22  ALJ reasonably concluded that Plaintiff's right-shoulder
23  impingement and low-back injury did not constitute severe
24  impairments because they did not have more than a minimal effect
25  on her ability to work.

26      In any event, even if the ALJ erred by finding Plaintiff's
27  alleged shoulder and low-back impairments nonsevere, that error
28  was harmless because he considered these impairments when

1    determining her RFC at step four.  See Lewis v. Astrue, 498 F.3d
2    909, 911 (9th Cir. 2007) (failure to address particular
3    impairment at step two harmless if ALJ fully evaluated claimant's
4    medical condition in later steps of sequential evaluation
5    process); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d
6    1050, 1055 (9th Cir. 2006) (ALJ's error harmless when
7    "inconsequential to the ultimate nondisability determination").
8    Specifically, the ALJ properly accounted for any work-related
9    impairments resulting from Plaintiff's shoulder and lower-back
10   pain by limiting her to occasional shoulder/overhead reaching and
11   postural activities and providing that she must be given normal
12   breaks from sitting.  (AR 22.)

13        Plaintiff is not entitled to remand on this ground.

14        C.   The ALJ Did Not Err in Determining that Plaintiff's
15             Condition Did Not Meet or Equal a Listing

16        Plaintiff contends that the ALJ "looked solely at Social
17   Security listing 1.00."  (J. Stip. at 12.)  In particular,
18   Plaintiff maintains that the ALJ failed to

19             specify whether he was considering 1.02, 1.04 or
20             any of the other listings.  Further, in light of
21             plaintiff's other alleged impairments, there are
22             other listings that would come into play, including
23             12.04 and 12.06.

24   (Id.)

25        1.   Applicable law

26        At step three of the sequential disability-evaluation
27   process, the ALJ must evaluate the claimant's impairments to see
28   if they meet or medically equal any of the impairments listed in

27

the Listings.  <u>See</u> 20 C.F.R § 404.1520(d); <u>Tackett v. Apfel</u>, 180

F.3d 1094, 1098 (9th Cir. 1999).  The claimant has the initial

burden of proving that an impairment meets or equals a Listing.

<u>See</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530–33, 110 S. Ct. 885,

891–92, 107 L. Ed. 2d 967 (1990).  "To meet a listed impairment,

a claimant must establish that he or she meets each

characteristic of a listed impairment relevant to his or her

claim."  <u>Tackett</u>, 180 F.3d at 1099.  "To equal a listed

impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to

the characteristics of a relevant listed impairment, or, if a

claimant's impairment is not listed, then to the listed

impairment 'most like' the claimant's impairment."  <u>Id.</u> (citing

20 C.F.R. § 404.1526).  Medical equivalence, moreover, "must be

based on medical findings"; "[a] generalized assertion of

functional problems is not enough to establish disability at step

three."  <u>Id.</u> at 1100 (citing 20 C.F.R. § 404.1526).

     An ALJ "must evaluate the relevant evidence before

concluding that a claimant's impairments do not meet or equal a

listed impairment."  <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir.

2001).  The ALJ, however, need not "state why a claimant failed

to satisfy every different section of the listing of

impairments."  <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th

Cir. 1990) (finding ALJ did not err in failing to state what

evidence supported conclusion that, or discuss why, claimant's

impairments did not satisfy a Listing).  Moreover, the ALJ "is

not required to discuss the combined effects of a claimant's

impairments or compare them to any listing in an equivalency

28

determination, unless the claimant presents evidence in an effort
to establish equivalence." <u>Burch</u>, 400 F.3d at 683 (citing <u>Lewis</u>,
236 F.3d at 514).

2.  <u>Analysis</u>

The ALJ's step-three determination is supported by
substantial evidence.  Plaintiff argues that the ALJ erred at
step three by failing to identify which Listing he was
considering or explain why he concluded that Plaintiff's
impairments did not meet or equal a Listing.  (J. Stip. at 12,
17.)  Although it is true that the ALJ found only that Plaintiff
"does not have an impairment or combination of impairments that
meets or medically equals one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1" and that "[n]o treating or
examining physician has recorded findings equivalent in severity
to the criteria of any listed impairment, including Listing 1.00,
nor does the evidence show medical findings that are the same or
equivalent to those of any listed impairment," without
specifically stating what evidence supported his conclusion (AR
21-22), elsewhere in the decision he dedicated three
single-spaced pages to summarizing and analyzing the medical
evidence and Plaintiff's testimony (AR 22-25).  Because those
findings were sufficient to support the ALJ's step-three
conclusion that Plaintiff's impairments did not meet or equal a
Listing, he did not err.  <u>See</u> <u>Gonzalez</u>, 914 F.2d at 1201
(rejecting claimant's argument that ALJ erred by failing to
discuss why he did not satisfy Listing because four-page
"evaluation of the evidence" was "an adequate statement of the
foundations on which the ultimate factual conclusions are based"

29

1  (internal quotation marks omitted)); <u>see also</u> <u>Lewis</u>, 236 F.3d at

2  513 (ALJ must discuss and evaluate evidence that supports

3  step-three conclusion but need not do so under specific heading).

4      Moreover, the ALJ "is not required to discuss the combined

5  effects of a claimant's impairments or compare them to any

6  listing in an equivalency determination, unless the claimant

7  presents evidence in an effort to establish equivalence."  <u>Burch</u>,

8  400 F.3d at 683 (citing <u>Lewis</u>, 236 F.3d at 514).  Here, Plaintiff

9  and her counsel never asked the ALJ to consider any Listings in

10 the 12 series, and Plaintiff has failed to point to any credited

11 evidence of functional limitations that would have affected the

12 ALJ's analysis, nor has she offered any plausible theory of how

13 the combination of her impairments equaled a Listing.  The ALJ

14 therefore did not commit reversible error by failing to make

15 additional findings at step three.

16     D.   <u>The ALJ Did Not Err in Assessing Plaintiff's</u>

17          <u>Credibility</u>

18     Plaintiff argues that the ALJ failed to provide clear and

19 convincing reasons for discounting her credibility.  (J. Stip. at

20 36-38, 44-45.)  Because the ALJ did provide clear and convincing

21 reasons supporting his evaluation of Plaintiff's testimony and

22 those reasons were supported by substantial evidence in the

23 record, reversal is not warranted on this basis.

24          1.   <u>Applicable law</u>

25     An ALJ's assessment of pain severity and claimant

26 credibility is entitled to "great weight."  <u>See</u> <u>Weetman v.</u>

27 <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779

28 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

1   believe every allegation of disabling pain, or else disability

2   benefits would be available for the asking, a result plainly

3   contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674

4   F.3d 1104, 1122 (9th Cir. 2012).   In evaluating a claimant's

5   subjective symptom testimony, the ALJ engages in a two-step

6   analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the

7   ALJ must determine whether the claimant has presented objective

8   medical evidence of an underlying impairment [that] could

9   reasonably be expected to produce the pain or other symptoms

10  alleged."  Id. at 1036 (internal quotation marks omitted).   If

11  such objective medical evidence exists, the ALJ may not reject a

12  claimant's testimony "simply because there is no showing that the

13  impairment can reasonably produce the *degree* of symptom alleged."

14  Smolen, 80 F.3d at 1282 (emphasis in original).  When the ALJ

15  finds a claimant's subjective complaints not credible, the ALJ

16  must make specific findings that support the conclusion.  See

17  Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).   Absent

18  affirmative evidence of malingering, those findings must provide

19  "clear and convincing" reasons for rejecting the claimant's

20  testimony.  Lester, 81 F.3d at 834.  If the ALJ's credibility

21  finding is supported by substantial evidence in the record, the

22  reviewing court "may not engage in second-guessing."   Thomas, 278

23  F.3d at 959.

24          2.   Relevant facts

25      At the hearing, Plaintiff testified that she stopped working

26  at Costco in January 2007 because of symptoms related to

27  bilateral plantar fasciitis.  (AR 33.)  Plaintiff acknowledged

28  that her job duties at Costco likely led to her condition but

31

stated that she did not file a workers' compensation claim.  (AR
33-34.)  When the ALJ inquired why not, Plaintiff initially
responded that she was hoping to return to Costco because it was
a good employer but then said "there wasn't any reason" she
didn't file a claim and that "[t]o be honest," she was on state
disability at the time so she was seen by other doctors.  (AR 33-
35.)  She stated that since her state disability had run out, she
had been supported by her husband and earned some money caring
for her six-year-old granddaughter, of whom she had sole custody.
(AR 37-38.)  Plaintiff explained that she stopped working because
of the pain in her feet but developed pain in her neck in March
2008, after she had stopped working.  (AR 38-39.)  She explained
that her neck was currently the "bigger obstacle" to her working.
(AR 45.)  She testified that in March 2008, she "woke up and
[she] felt like [she] slept on her neck wrong so [she] didn't
know there was a problem."  (AR 39.)  She further indicated that
she had injured her neck in 2001, for which she filed a workers'
compensation claim, but the doctor who examined her in March 2008
did not feel it was related to that injury.  (Id.)  According to
Plaintiff, she would have been able to perform a "seated job"
between January 2007 and March 2008 but could not presently work
because her neck was in "constant acute pain."  (AR 39-40.)
Plaintiff also stated that she was initially treated
conservatively for her neck pain but had neck surgery in October
2008 that provided "immediate improvement but then it, the, the
symptoms started coming back."  (AR 40.)  She explained that she
had two additional herniated discs, "the C3 and 4 and C5 and 6."
(Id.)  In addition, Plaintiff testified that her neck pain had

gotten worse since the surgery and "goes down into the middle of [her] spine into her shoulder blades up into the skull of [her] head." (AR 41.) She acknowledged that her treating neurologist was aware of her two herniated discs, but only conservative treatment, consisting of "[p]hysical therapy, massages, [and] pain medication," had been recommended. (Id.) Plaintiff did note that her treating neurologist suggested more surgery might be a possibility but also said that she would be "exchanging one pain for another." (Id.) She indicated that her neurologist suggested she go to a specialist for a Botox injection to treat her neck pain but that her insurance would not cover it. (AR 46.)

Plaintiff testified that what she did on a daily basis was dictated by her pain, for which she took a pain medication, an antiinflammatory, and a muscle relaxer and used a pain patch. (AR 42-43.) She indicated that the pain medication sometimes caused the pain to "subside," but that at other times she must do additional care, like "laying on a heating pad or ice packs" several times a day as needed. (AR 43.) She had trouble falling and staying asleep and woke three to four times a night, which caused her to need naps during the day. (AR 44.) She estimated that since March 2008, she spent at least 50% of the day lying down. (AR 48.) Plaintiff explained that she did not do any activities away from home except go to medical appointments, but she was able to drive and did drive her granddaughter to school. (AR 47.) She later admitted that she also occasionally grocery shopped and attended church. (AR 48, 51.) Finally, Plaintiff also stated that she cooked, got her granddaughter ready in the

morning and drove her to school, and read the Bible for about
three hours a day.  (AR 49-51.)

### 3.   Analysis

The ALJ evaluated Plaintiff's credibility as follows:

The claimant's testimony as well as the statements in the
exhibits are only credible to the extent she is able to
perform the residual functional capacity herein.  While
the claimant alleges she is unable to perform work
activity, her records do not support this allegation.
The claimant stopped working due to plantar fasciitis
that was a work related injury but she never filed a
workers' compensation claim.  Instead, she did not go
back to work.  A year later, she injured her neck which
ultimately required surgery. Currently she drives, takes
care of a 6 year old granddaughter, does some grocery
shopping, cooks, attends church, and reads the bible for
about 3 hours a day.  She testified her doctor wants to
fuse the level above and below her neck but that is
supported [sic] by her medical records.

(AR 23.)

Reversal is not warranted based on the ALJ's alleged failure
to make proper credibility findings or properly consider
Plaintiff's subjective symptoms.  The ALJ partially credited
Plaintiff's allegations in assessing an RFC more restrictive than
that opined by Dr. Sophon.  (AR 22, 25.)  To the extent the ALJ
did reject Plaintiff's allegations, he provided clear and
convincing reasons for doing so.  As the ALJ noted, Plaintiff's
treatment records "show substantial improvement from March 1,

2008 to the present." (AR 23.)  Her plantar fasciitis improved

after January 2008, no evidence showed she needed treatment after

that time for foot pain, and her feet were normal during her

January 2010 consultative exam.  (AR 179-209, 367-71.)  In

addition, her neck pain improved after her October 2008 surgery;

the most recent record from Dr. Rodriguez, her treating

neurologist, in April 2010 recommended only conservative

treatment and no future surgeries.  (AR 376-77.)  Based on this

evidence, the ALJ was entitled to discount Plaintiff's subjective

testimony to the extent it conflicted with the medical record.

See Carmickle, 533 F.3d at 1161 ("Contradiction with the medical

record is a sufficient basis for rejecting the claimant's

subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in

determining credibility, ALJ may consider "whether the alleged

symptoms are consistent with the medical evidence"); Burch, 400

F.3d at 681 ("Although lack of medical evidence cannot form the

sole basis for discounting pain testimony, it is a factor that

the ALJ can consider in his credibility analysis."); Kennelly v.

Astrue, 313 F. App'x 977, 979 (9th Cir. 2009) (same); Tommasetti

v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer

that claimant's "response to conservative treatment undermines

[claimant's] reports regarding the disabling nature of his

pain").

     The ALJ also properly rejected Plaintiff's subjective

allegations on the basis that she did not file a workers'

compensation claim after leaving work in January 2007 because of

plantar fasciitis, a work-related injury.  (AR 23.)  While

Plaintiff initially testified that she did not file a claim

because she hoped to return to work, she then stated that there was no reason she did not file a claim and conceded that from January 2007 to March 2008, she would have been able to perform a "seated job." (AR 33-34, 45, 47, 53-54.) The ALJ reasonably considered Plaintiff's failure to file a claim as undermining her allegations that she was unable to work. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (in evaluating plaintiff's testimony, the ALJ may use "'ordinary techniques of credibility evaluation'" (quoting Smolen, 80 F.3d at 1284)).

Moreover, as the ALJ noted, Plaintiff admitted that she was able to do a wide variety of daily activities, including driving, taking care of her six-year-old granddaughter, occasional grocery shopping, cooking, attending church, and reading the Bible about three hours a day. (AR 23, 42-51.) That Plaintiff's allegations of disabling pain were inconsistent with her daily activities was a valid reason for the ALJ to discount her testimony. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ properly discounted claimant's testimony because "she leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments"); Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Because the ALJ gave clear and convincing reasons for his credibility finding and those reasons were supported by substantial evidence, the Court "may not engage in second-guessing" the ALJ. Thomas, 278 F.3d at 959 (citation

36

1   omitted).  Plaintiff is not entitled to reversal on this claim.

2       E.   The ALJ Did Not Err in Failing to Consider Whether

3            Plaintiff Was Disabled Under the Medical-Vocational

4            Guidelines

5       Plaintiff contends the ALJ's RFC assessment that Plaintiff

6   could perform a limited range of light work was "essentially" a

7   finding that she could perform sedentary work and thus the ALJ

8   should have determined that Plaintiff was disabled under the

9   Medical-Vocational Guidelines ("the Grids").  See Hoopai v.

10  Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (explaining that

11  Grids are used to assist in step-five determination of whether

12  significant number of jobs exist in national economy that

13  claimant can perform); 20 C.F.R. § 404.1569.  Plaintiff's

14  contention lacks merit.  Because the ALJ properly found, at step

15  four, that Plaintiff could perform her past relevant work, he was

16  not required to go onto the next step and consider whether

17  Plaintiff was disabled under the Grids.  See 20 C.F.R.

18  §§ 404.1520(f) (explaining that the ALJ's inquiry is complete if

19  he determines at step four that plaintiff is not disabled);

20  404.1560(b)(3) ("If we find that you have the residual functional

21  capacity to do your past relevant work, we will determine that

22  you can still do your past work and are not disabled.  We will

23  not consider your vocational factors of age, education, and work

24  experience or whether your past relevant work exists in

25  significant numbers in the national economy.").  Plaintiff also

26  argues that the ALJ should have applied the Grids because

27  Plaintiff's past work "is best described as a 'composite job.'"

28  (J. Stip. at 36.)  But the VE testified that Plaintiff's job at

                                37

Costco was "really two different jobs" and said that Plaintiff could perform one of them. (AR 56-57.) This is in fact exactly like the case cited by Plaintiff, <u>Castillo v. Astrue</u>, No. CV 10-2584 JC, 2010 WL 4916608, at *4 n.3 (C.D. Cal. Nov. 3, 2010), in which the Court found an argument almost identical to Plaintiff's "unavailing." Moreover, because the ALJ properly rejected the opinions of Drs. Landrey and Tran, the ALJ's step-four finding was proper regardless of whether Plaintiff's past job could be characterized as a composite job. Therefore, Plaintiff is not entitled to reversal on this basis.

**VII. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 5, 2013

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."