O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KAREN MILDRED PEDREGON,        ) Case No. EDCV 12-0361-JPR
                               )
                Plaintiff,     )
                               )
          vs.                  ) MEMORANDUM OPINION AND ORDER
                               ) AFFIRMING THE COMMISSIONER
CAROLYN W. COLVIN, Acting       )
Commissioner of Social         )
Security,[1]                   )
                               )
                Defendant.     )
                               )

I.    **PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision

denying her application for Social Security disability insurance

benefits ("DIB").  The parties consented to the jurisdiction of

the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C.

§ 636(c).  This matter is before the Court on the parties' Joint

Stipulation, filed February 8, 2013, which the Court has taken

under submission without oral argument.  For the reasons stated

_____

     [1]    On  February  14,  2013,  Colvin  became  the  Acting
Commissioner of Social Security.  Pursuant to Federal Rule of Civil
Procedure 25(d), the Court therefore substitutes Colvin for Michael
J. Astrue as the proper Respondent.

1

below, the Commissioner's decision is affirmed and this action is dismissed.

**II.  BACKGROUND**

Plaintiff was born on February 7, 1961, and has a 12th-grade education.  (Administrative Record ("AR") 37, 123.)  She previously worked in membership sales and as a cashier/checker and material handler.  (AR 25, 56-57.)

On June 27, 2008, Plaintiff filed an application for DIB. (AR 62, 123-25.)  Plaintiff alleged that she had been unable to work since January 23, 2007,[2] because of bilateral plantar fasciitis and neck and back pain.  (AR 64, 123.)  Her application was denied initially, on September 18, 2008 (AR 62, 64-68), and upon reconsideration, on January 29, 2009 (AR 63, 69-73).

On March 12, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 90-91.)  A hearing was held on May 20, 2010, at which Plaintiff, who was represented by counsel, appeared and testified.  (AR 32-56.)  A vocational expert ("VE") also testified.  (AR 55-59.)  In a written decision issued on July 12, 2010, the ALJ determined that Plaintiff was not disabled.  (AR 19-26.)  On July 19, 2010, Plaintiff requested review of the ALJ's decision.  (AR 15.)  On January 13, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings

---

[2]    Plaintiff subsequently amended her alleged disability onset date to March 1, 2008.  (AR 53.)

1   and decision should be upheld if they are free of legal error and

2   supported by substantial evidence based on the record as a whole.

3   § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct.

4   1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d

5   742, 746 (9th Cir. 2007).  Substantial evidence means such

6   evidence as a reasonable person might accept as adequate to

7   support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter

8   v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

9   a scintilla but less than a preponderance.  Lingenfelter, 504

10  F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880,

11  882 (9th Cir. 2006)).  To determine whether substantial evidence

12  supports a finding, the reviewing court "must review the

13  administrative record as a whole, weighing both the evidence that

14  supports and the evidence that detracts from the Commissioner's

15  conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

16  1996).  "If the evidence can reasonably support either affirming

17  or reversing," the reviewing court "may not substitute its

18  judgment" for that of the Commissioner.  Id. at 720-21.

19  **IV.   THE EVALUATION OF DISABILITY**

20      People are "disabled" for purposes of receiving Social

21  Security benefits if they are unable to engage in any substantial

22  gainful activity owing to a physical or mental impairment that is

23  expected to result in death or which has lasted, or is expected

24  to last, for a continuous period of at least 12 months.  42

25  U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

26  (9th Cir. 1992).

27      A.   The Five-Step Evaluation Process

28      The ALJ follows a five-step sequential evaluation process in

3

assessing whether a claimant is disabled.  20 C.F.R.
§ 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the
Commissioner must determine whether the claimant is currently
engaged in substantial gainful activity; if so, the claimant is
not disabled and the claim must be denied.  § 404.1520(a)(4)(i).
If the claimant is not engaged in substantial gainful activity,
the second step requires the Commissioner to determine whether
the claimant has a "severe" impairment or combination of
impairments significantly limiting his ability to do basic work
activities; if not, the claimant is not disabled and the claim
must be denied.  § 404.1520(a)(4)(ii).  If the claimant has a
"severe" impairment or combination of impairments, the third step
requires the Commissioner to determine whether the impairment or
combination of impairments meets or equals an impairment in the
Listing of Impairments ("Listing") set forth at 20 C.F.R., Part
404, Subpart P, Appendix 1; if so, disability is conclusively
presumed and benefits are awarded.  § 404.1520(a)(4)(iii).  If
the claimant's impairment or combination of impairments does not
meet or equal an impairment in the Listing, the fourth step
requires the Commissioner to determine whether the claimant has
sufficient residual functional capacity ("RFC")[3] to perform his
past work; if so, the claimant is not disabled and the claim must
be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of
proving that he is unable to perform past relevant work.  <u>Drouin</u>,

---

[3]     RFC is what a claimant can still do despite existing
exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
<u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  § 404.1520(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 1, 2008, her amended alleged onset date.  (AR 21.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of "history of bilateral plantar fasciitis; and degenerative disk disease of the cervical spine, status post fusion."  (Id. (citation omitted).)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listings, focusing specifically on Listing 1.00.  (AR 21-22.)  At step four, the ALJ found that Plaintiff retained the RFC to perform light work[4] but was limited to "occasionally performing postural

---

[4]   "Light work" is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.  A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve

activities; no ladders, ropes or scaffolds; occasional over shoulder/over head reaching bilaterally; no unprotected heights; no dangerous machinery; and she must avoid extreme cold and vibration." (AR 22.) Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work in membership sales and as a cashier. (AR 25.) Accordingly, the ALJ determined that Plaintiff was not disabled without reaching step five of the evaluation process. (AR 26.)

**V.   RELEVANT FACTS**

Plaintiff underwent two surgeries to treat her plantar fasciitis, in 1999 and 2000, and continued to work on modified duty for several years after the surgeries. (AR 417, 454.) Her symptoms increased in 2007, and she received a series of off-work orders from her treating podiatrist, Dr. Glenn Ocker, between January 2007 and January 2008. (AR 180-81, 185, 189, 192, 196, 198-206, 208-09.) At the hearing, Plaintiff testified that between January 2007 and March 1, 2008, her alleged onset date, she would have been able to work in a "seated job." (AR 40.)

In March 2008, Plaintiff began experiencing neck pain and was initially treated with pain medication and physical therapy. (AR 303-06, 419-21.) On April 21, 2008, Plaintiff was evaluated by Dr. Sachin Patel for right shoulder pain, and he treated her with a cortisone injection. (AR 423-24.) On May 7, 2008, Plaintiff reported to Dr. Patel that her shoulder impingement was "1000 times better after the cortisone injection." (AR 422.) Dr. Patel was "happy with her progress" and opined that Plaintiff

occasional walking or standing. § 404.1567(a)-(b).

1  might need another cortisone injection in the future if her
2  symptoms recurred.  (Id.)

3      On July 18, 2008, an MRI of Plaintiff's cervical spine
4  revealed mild to moderate central canal stenosis and severe right
5  neural foramina stenosis at C4-5 secondary to a six-millimeter
6  right paracentral disc herniation/extrusion; minimal to mild
7  central canal stenosis and minimal to mild left neural foraminal
8  stenosis at C5-6 secondary to a three-millimeter left paracentral
9  broad-based disc protrusion; and minimal central canal stenosis
10 at C3-4 secondary to a two-millimeter bulging of the disc.  (AR
11 338-39.)  Plaintiff continued conservative treatment for her neck
12 pain for approximately six months, but her symptoms did not
13 improve.  (AR 334.)  As a result, on October 21, 2008, Plaintiff
14 underwent an anterior cervical discectomy, arthrodesis or spinal
15 fusion, and the insertion of titanium plates at C4-5 performed by
16 Dr. Jose Rodriguez, Plaintiff's treating neurosurgeon.  (AR 329-
17 31.)  On November 4, 2008, Plaintiff reported that her neck pain
18 had improved since surgery.  (AR 332.)  She had limited range of
19 motion in her right shoulder secondary to pain, with weakness in
20 the biceps but normal triceps function.  (Id.)

21     On November 24, 2008, x-rays showed straightening of
22 Plaintiff's cervical spine, a plate and multiple screws through
23 C4-5 with bone dowel, status post-spinal fusion, mild
24 degenerative changes at C5-6 and C6-7, and mild levoscoliosis of
25 the cervical spine; the rest of the bones appeared unremarkable.
26 (AR 341.)  Following surgery, Plaintiff continued conservative
27 treatment with Dr. Rodriguez, including physical therapy and pain
28 medications.  (AR 380-89, 392-93.)

On September 18, 2008, consulting physician R. Bitonte reviewed Plaintiff's medical records and completed a physical RFC assessment; he opined that Plaintiff was capable of performing light work except that she could only occasionally climb, stoop, kneel, crouch, or crawl, and she should never balance.  (AR 320-26.)  Moreover, Dr. Bitonte stated that Plaintiff's ability to reach was limited and she should avoid concentrated exposure to extreme cold, vibration, fumes, and hazards.  (AR 322-23.)  Dr. Bitonte's findings were affirmed by consulting physician S. Laiken on January 27, 2009.  (AR 363-64.)

On January 12, 2010, Plaintiff was examined by consulting orthopedist Dr. Bunsri Sophon.  (AR 367-72.)  Dr. Sophon found that Plaintiff was obese but not in any acute distress; her posture and gait were normal; and examination of her cervical spine revealed "a well-healed non-tender 4 cm right transverse surgical scar on the neck" and no evidence of tenderness or muscle spasm, with 30/70-degree flexion, 30/60-degree extension, 20/45-degree lateral bending bilaterally, and 45/80-degree rotation bilaterally.  (AR 369-70.)  Further, her thoracic and lumbar spine showed no evidence of tenderness or muscle spasm, with 60/90-degree flexion, 25/30-degree extension, and 25/25-degree lateral bending bilaterally; her straight-leg-raising test was normal; her upper and lower extremities were all normal, with no decreased range of motion and no deformity, swelling, palpable mass, inflamation, or tenderness; and her neurological examination and motor strength were normal.  (AR 370-71.)  Dr. Sophon diagnosed Plaintiff with lumbosacral strain and cervical disc disease, status post-C4-5 spinal fusion.  (AR 372.)

Finally, Dr. Sophon concluded that Plaintiff was "capable of lifting and carrying 50 pounds occasionally, 20 pounds frequently," and "is restricted to sitting, standing and walking 6 hours out of an 8-hour workday." (Id.)

On February 1, 2010, Dr. Rodriguez reported that Plaintiff was in good spirits and her cervical spine had full range of motion. (AR 378-79.) She still experienced some pain, but it was reduced by physical therapy, massage, and the application of heat and ice. (AR 378.) Dr. Rodriguez compared an MRI done on December 9, 2009, to her old MRI and noted resolution of her previous herniated disc at C4-5. (AR 379.) He also noted his belief that Plaintiff had a right paracentral disc herniation at C5-6 and a small disc protrusion at C3-4. (Id.) On April 5, 2010, Plaintiff reported that on a scale of one to 10, her pain was a four. (AR 376.) The range of motion of her cervical spine had some limitations, but she had full range of motion in her right shoulder girdle. (Id.) Dr. Rodriguez opined that no further surgery was recommended and Plaintiff should continue with conservative care. (AR 377.)

On April 19, 2010, Dr. William Landrey, Plaintiff's treating podiatrist, noted that x-rays of Plaintiff's feet were positive for both plantar calcaneal spurs and posterior spurs; an excessive amount of pronation was evident on the right; and the talus was anteriorly displaced as well as excessively closer to the median plane of the body than normal compared to the calcaneus. (AR 455.) The same day, Dr. Landrey completed a Medical Statement Regarding Foot Problem for Social Security Disability Claim, on which he noted that Plaintiff had had

"painful feet" for over 10 years and had been diagnosed with plantar fasciitis, achilles tendonitis, and heel spurs. (AR 456.) He opined that Plaintiff could stand or walk for less than 90 minutes in an eight-hour day for up to 30 minutes at a time and that she needed to elevate her legs occasionally in the morning and most of the time in the afternoon. (AR 456-57.) Moreover, she could sit for up to two hours in an eight-hour day and had to be able to walk around every hour during the day for about 15 minutes at a time. (AR 457.) Dr. Landrey also indicated that Plaintiff would be unable to walk one block at a reasonable pace on uneven or unstable ground and had mild foot pain that increased to severe with prolonged weight-bearing. (Id.) Additionally, Plaintiff needed 15-minute breaks every hour during an eight-hour workday and could lift 10 pounds occasionally and 20 pounds rarely. (Id.) Dr. Landrey further opined that Plaintiff could rarely twist, stoop, or crouch but should never climb ladders or stairs. (AR 458.) Finally, he stated that Plaintiff would likely have good days and bad days and miss more than four days a month because of her impairments. (Id.)

On April 23, 2010, four days after Dr. Landrey had filled out his medical statement, Dr. David Tran, who had been treating Plaintiff for about a year (AR 44), completed a Physical Residual Functional Capacity Questionnaire and indicated that Plaintiff had had neck pain since October 2008, low-back pain since 2001, and bilateral plantar fasciitis since 1998. (AR 460-64.) He stated that Plaintiff's diagnoses included neck pain with cervical radiculopathy, chronic low-back pain, bilateral plantar

fasciitis, depression, and anxiety.  (AR 460.)  Dr. Tran opined

that Plaintiff's prognosis was poor and noted that she

experienced symptoms of chronic pain in her neck, low back, and

feet, as well as headaches, dizziness, and fatigue.  (Id.)  He

also stated that Plaintiff's treatment had consisted of

medications, and psychological symptoms affecting her physical

condition included depression, anxiety, personality disorder, and

sleep deprivation.  (AR 460-61.)  Moreover, Dr. Tran opined that

Plaintiff frequently experienced pain that would interfere with

her attention and concentration and was incapable of performing

even a low-stress job because stress triggered her pain and

headaches.  (AR 461.)  He explained that Plaintiff could sit or

stand for 15 minutes at a time; sit, stand, or walk for up to two

hours in an eight-hour workday; and rarely lift and carry less

than ten pounds.  (AR 461-62.)  In addition, Dr. Tran stated that

Plaintiff could rarely look down, occasionally turn her head

right or left and look up, and frequently hold her head in a

static position.  (AR 463.)  He also provided that she could

rarely twist, stoop, or crouch, never climb ladders, and

occasionally climb stairs.  (Id.)  Finally, for several of the

questions on the form regarding Plaintiff's specific functional

limitations, Dr. Tran simply wrote, "unable to work now."  (AR

462-63.)

     In his decision, the ALJ gave "limited weight" to the

opinions of Drs. Landrey and Tran because both opinions were (1)

"unsupported" by any treatment notes; (2) "not supported by the

objective medical evidence"; (3) "inconsistent with one another

despite being opined days apart"; (4) "inconsistent with the

11

claimant's activities of daily living and her reports of reduced
pain"; (5) "not consistent with the opinion that only
conservative care is needed"; and (6) "inconsistent with findings
of Dr. Sophon who examined the claimant three months earlier."
(AR 24.)   The ALJ also found that neither doctor specialized in
psychology and that there was no evidence of a medically
determinable mental impairment.   (<u>Id.</u>)   The ALJ gave "great
weight" to Dr. Sophon's opinion because he "had the opportunity
to examine the claimant, reviewed some of her records, and is a
qualified expert in the field in which his opinions are based
upon."   (AR 25.)   The ALJ also gave "great weight" to the
reviewing nonexamining physicians' opinions because they
"reviewed the claimant's records and are familiar with the
[Social Security Administration's] rules and regulations."   (<u>Id.</u>)

**VI.   DISCUSSION**

     Plaintiff alleges that the ALJ erred by (1) failing to
consider the severity of Plaintiff's anxiety, depression, weight,
right-shoulder impingement, and lower-back injury with disc
damage; (2) failing to properly assess whether her condition met
or equaled a Listing; (3) determining Plaintiff could perform her
past relevant work; (4) failing to consider all the relevant
factors in assessing Plaintiff's RFC; (5) failing to consider
whether Plaintiff was disabled under the Medical-Vocational
Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2; and (6)
finding that Plaintiff's subjective allegations were not fully
credible.   (J. Stip. at 3-4, 10-12, 17-20, 22-24, 33-36, 38, 44-

45.)   None of these contentions warrant reversal.[5]

A. <u>The ALJ Did Not Err in Determining Plaintiff's RFC</u>

Plaintiff contends that the ALJ erred in determining that she retained the RFC to perform a limited range of light work. (J. Stip. at 22-24, 33-34.)   Specifically, Plaintiff argues that the ALJ erred by (1) failing to account for "the fact [Plaintiff] had to take leave from work prior to her alleged onset date" (J. Stip. at 23), (2) rejecting the opinions of her treating physicians, Drs. Landrey and Tran (J. Stip. at 24, 33-34), and (3) "neglecting to consider testimony from the [VE] that supported a finding of 'disabled'" (J. Stip. at 24).

1.   <u>Applicable law</u>

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.   <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).   The ALJ must have considered all the medical evidence in the record and "explain in [his or her] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources."   20 C.F.R. § 404.1527(e)(2)(ii).   In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. See <u>Batson v. Comm'r of the Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197-98 (9th Cir. 2004) ("ALJ was not required to incorporate

_____

[5]   The Court has rearranged the order in which it addresses Plaintiff's claims from that followed by the parties, to avoid repetition and for other reasons.

evidence from the opinions of the claimant's treating physicians, which were permissibly discounted"); Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints").

An ALJ does not need to adopt any specific medical source's RFC opinion as his or her own.  Vertigen v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson, 359 F.3d at 1195.  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

          2.   Discussion

     The ALJ found that Plaintiff retained the RFC to perform less than a full range of light work.  (AR 22.)  Specifically, the ALJ determined that Plaintiff "is limited to lifting/carrying 10 pounds frequently, 20 pounds occasionally; sitting without restrictions but with normal breaks; standing and walking 6 hours

14

in an 8 hour workday, with appropriate breaks; occasionally performing postural activities; no ladders, ropes or scaffolds; occasional over shoulder/over head reaching bilaterally; no unprotected heights; no dangerous machinery; and she must avoid extreme cold and vibration." (Id.)  He further stated that in making that RFC finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered opinion evidence."  (Id.)

Plaintiff argues that the ALJ erred in his RFC finding because he did not properly consider that Plaintiff was off work prior to her alleged onset date. (J. Stip. at 23.)  The ALJ, however, explicitly considered medical evidence prior to Plaintiff's alleged onset date. (AR 23.)  In particular, the ALJ considered evidence that Plaintiff became unable to work in January 2007 and received a series of off-work orders between January 2007 and January 2008.  (Id.)  Although a portion of Plaintiff's testimony seems to indicate that she was off work a year prior to January 2007 (AR 45), she later clarified that she officially left her job in January 2008 and had not been working for a year prior.  (AR 53.)  This is confirmed by the record evidence discussed above regarding Plaintiff's off-work orders. (See AR 179-209.)

Additionally, the ALJ properly considered Plaintiff's testimony that she could have worked in a "seated job" between January 2007 and March 2008, when her neck impairment began.  (AR 40, 45.)  Indeed, following this discussion with the ALJ, Plaintiff and her counsel amended Plaintiff's alleged onset date

to March 2008 because Plaintiff conceded that she could have performed full-time work prior to that date.  (AR 53.)  Thus, the ALJ properly considered the evidence that Plaintiff was off work prior to her alleged onset date.  Plaintiff is not entitled to reversal on this basis.

Plaintiff further contends that the ALJ's RFC finding was improper because it did not reflect the findings of her treating doctors, Drs. Landrey and Tran. (J. Stip. at 23-24, 33-34.)

Three types of physicians may offer opinions in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." Lester, 81 F.3d at 830.  The opinions of treating physicians are generally afforded more weight than those of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record.  20 C.F.R. § 404.1527(c)(2).  If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with other substantial evidence from the record, it should be given controlling weight and should be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830; 20 C.F.R. § 404.1527(c)(2).  When a treating physician's opinion conflicts with other medical evidence or was not supported by

clinical or laboratory findings, the ALJ must provide only "specific and legitimate reasons" for discounting that doctor's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Factors relevant to the evaluation of a treating physician's opinion include the "[l]ength of the treatment relationship and the frequency of examination" and the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2)(i)-(ii).

The ALJ provided specific and legitimate reasons for discounting the opinions of Drs. Landrey and Tran.[6] First, apart from the checklist-style questionnaires both doctors submitted, the record contains only two treatment notes from Dr. Landrey, in April 2010 (AR 454-55), and no records from Dr. Tran. One of the notes from Dr. Landrey contained no treatment observations, only plaintiff's complaints. (AR 454.) As a result, the ALJ properly rejected both opinions on the basis that they were "unsupported." (AR 24); Batson, 359 F.3d at 1194-95 (holding that treating physicians' conflicting, checklist-form opinions were entitled to minimal weight).

Second, the ALJ properly rejected the opinions on the basis that they were not supported by the objective medical evidence. (AR 24.) For example, Plaintiff's treatment records indicated that her neck pain improved after her surgery, and post-surgery diagnostic testing showed that her cervical spine had straightened and only mild degenerative changes at the C5-6 and

---

[6]   Because they conflicted with the opinions of the state-agency physicians, the ALJ needed to provide only "specific and legitimate" reasons for rejecting them. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

1    C6-7 levels remained.  (AR 341, 382, 386, 402.)  The evidence

2    also shows that while Plaintiff complained of right-shoulder pain

3    in 2008, it improved after a cortisone shot, and she did not

4    complain of any shoulder pain or exhibit reduced range of motion

5    in her 2010 consultative exam.  (AR 367, 370, 422.)  It is also

6    clear from the record that Plaintiff's plantar fasciitis had

7    improved by January 2008; during her 2010 consultative exam, she

8    did not complain of foot pain and her feet were "normal."  (AR

9    179-209, 367-71.)

10        Third, the ALJ also properly gave the opinions less weight

11   because they were inconsistent with each other despite being

12   offered days apart.  (AR 24); see 20 C.F.R. § 404.1527(d)(4)

13   (explaining that more weight should be afforded to medical

14   opinions that are consistent with the record as a whole).  For

15   example, Dr. Landrey opined that Plaintiff could stand for 30

16   minutes at a time and Dr. Tran stated she could stand for only 15

17   minutes (AR 456, 462); Dr. Tran opined that she could never lift

18   or carry more than 10 pounds and Dr. Landrey stated she could do

19   so occasionally (AR 457, 462); and Dr. Tran indicated that

20   Plaintiff could not even walk one block, but Dr. Landrey opined

21   that she needed to walk for 15 minutes every hour (AR 457, 461).

22        Fourth, the ALJ properly concluded that the opinions were

23   inconsistent with Plaintiff's reported daily activities.  (AR

24   24.)  Plaintiff testified that she was able to drive; take care

25   of her six-year-old granddaughter, of whom she had sole custody;

26   and occasionally grocery shop, cook, attend church, and read the

27   Bible for three hours a day.  (AR 37-38, 47-51.)  The ALJ was

28   entitled to determine that the ability to perform these

18

1  activities was inconsistent with the opinions of Drs. Landrey and
2  Tran that, for example, Plaintiff could not walk, stand, or sit
3  for any extended period of time.  (AR 454-64.)

4      Fifth, the ALJ properly found that the opinions of Drs.
5  Landrey and Tran were inconsistent with the conservative
6  treatment recommended for Plaintiff's neck and feet.  (AR 24);
7  see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)
8  (holding ALJ properly rejected opinion of treating physician who
9  prescribed conservative treatment yet opined that claimant was
10  disabled).  For example, following her neck surgery, Plaintiff
11  was prescribed pain medication and physical therapy, and in April
12  2010, her treating neurologist, Dr. Rodriguez, opined that no
13  further surgery was recommended and Plaintiff should continue
14  with conservative treatment as needed for her pain.  (AR 376-81,
15  383, 385, 387, 393.)  Additionally, as discussed above,
16  Plaintiff's plantar fasciitis improved by January 2008.  (AR 179-
17  209.)

18      Sixth, the ALJ was entitled to credit the opinion of Dr.
19  Sophon instead of Drs. Landrey and Tran because his opinion was
20  supported by independent clinical findings and thus constituted
21  substantial evidence upon which the ALJ could properly rely.  See
22  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001);
23  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr.
24  Sophon reviewed Plaintiff's medical records and conducted a
25  complete orthopedic examination of Plaintiff.  (AR 367-73.)  The
26  ALJ also properly relied on the fact that the opinions of Drs.
27  Landrey and Tran conflicted with the opinions of nonexamining
28  physicians Drs. Bitonte and Laiken.  (AR 25, 320-36, 363-66); see

Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when . . . consistent with independent clinical findings or other evidence."). Moreover, any conflict in the properly supported medical-opinion evidence was the sole province of the ALJ to resolve. See Andrews, 53 F.3d at 1041.

The ALJ also properly rejected Dr. Tran's opinion that Plaintiff's psychological condition affected her physical condition and that she was incapable of even low-stress jobs because Dr. Tran was not a specialist in psychology and because no evidence existed in the record that Plaintiff alleged having a mental impairment or received any mental health treatment. (AR 24, 461); see 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Finally, Plaintiff argues that the ALJ erred in his RFC assessment because he did not consider the VE's testimony that supported a finding of disability. (J. Stip. at 24.) The VE testimony cited by Plaintiff, however, refers to hypotheticals posed to the VE that contained limitations opined by Drs. Landrey and Tran that, as discussed above, were properly rejected by the ALJ and thus not required to be included in Plaintiff's RFC. (See AR 58-59); Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("Nor was the ALJ bound to accept as true the restrictions set forth in the second hypothetical question if they were not supported by substantial evidence. An ALJ is free to accept or reject restrictions in a hypothetical question that

20

1  are not supported by substantial evidence."); <u>Rollins</u>, 261 F.3d

2  at 857 ("[B]ecause the ALJ included all of the limitations that

3  he found to exist, and because his findings were supported by

4  substantial evidence, the ALJ did not err in omitting the other

5  limitations that Rollins had claimed, but had failed to

6  prove.").[7]

7       In sum, the ALJ's RFC assessment was supported by

8  substantial evidence, and Plaintiff is not entitled to reversal

9  on this claim.

10      B.   <u>The ALJ Did Not Err in His Step-Two Analysis</u>

11      Plaintiff contends that the ALJ erred in his step-two

12  assessment by failing to consider the severity of Plaintiff's

13  lower-back injury with disc damage, right-shoulder impingement,

14  weight, anxiety, and depression.  (J. Stip. at 3-4, 10-12.)

15  Reversal is not warranted on this basis because substantial

16  _____

17      [7]    Elsewhere, Plaintiff makes the similar argument that the
    ALJ erred in his step-four determination because "the portion of
18  the [VE] testimony that limited Plaintiff to standing and walking
    no more than two hours in an eight hour day should have been
19  considered more thoroughly." (J. Stip. at 22; <u>see also</u> <u>id.</u> at 17-
    20.)  Plaintiff also implies that limitations related to her
20  alleged mental impairment should have been considered.  (<u>Id.</u>)
    These limitations, however, were opined by Drs. Landrey and Tran
21  (AR 457, 462), and, as discussed above, because the ALJ properly
    rejected both of those opinions, he was not required to consider
22  them in his RFC assessment.  <u>See</u> <u>Batson</u>, 359 F.3d at 1197.  It was
    Plaintiff's burden at step four to prove that she is unable to
23  return to her past relevant work, and she failed to do so.  <u>See</u>
    <u>Pinto v. Massanari</u>, 249 F.3d 840, 845 (9th Cir. 2001).  In making
24  his step-four determination, the ALJ properly relied on the VE's
    testimony that a hypothetical person with Plaintiff's RFC could
25  perform Plaintiff's past relevant work.  (AR 25); <u>see</u> <u>Bayliss</u>, 427
26  F.3d at 1218 ("A VE's recognized expertise provides the necessary
    foundation for his or her testimony," and "no additional foundation
27  is required").  Therefore, Plaintiff is not entitled to reversal on
    this basis.
28

1  evidence in the record supports the ALJ's step-two determination.

2       At step two of the sequential evaluation process, a

3  plaintiff has the burden to present evidence of medical signs,

4  symptoms, and laboratory findings that establish a medically

5  determinable physical or mental impairment that is severe and can

6  be expected to result in death or last for a continuous period of

7  at least 12 months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05

8  (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D));[8]

9  see 20 C.F.R. §§ 404.1520, 404.1509.  Substantial evidence

10  supports an ALJ's determination that a claimant is not disabled

11  at step two when "there are no medical signs or laboratory

12  findings to substantiate the existence of a medically

13  determinable physical or mental impairment." Ukolov, 420 F.3d at

14  1004-05 (citing SSR 96-4p).  An impairment may never be found on

15  the basis of the claimant's subjective symptoms alone. Id. at

16  1005.

17       Step two is "a de minimis screening device [used] to dispose

18  of groundless claims." Smolen, 80 F.3d at 1290.  Applying the

19  applicable standard of review to the requirements of step two, a

20  court must determine whether an ALJ had substantial evidence to

21  find that the medical evidence clearly established that the

22  claimant did not have a medically severe impairment or

23  combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687

24  (9th Cir. 2005); see also Yuckert v. Bowen, 841 F.2d 303, 306

25  (9th Cir. 1988) ("Despite the deference usually accorded to the

26

27       [8]   A "medical sign" is "an anatomical, physiological, or
28  psychological abnormality that can be shown by medically acceptable
   clinical diagnostic techniques." Ukolov, 420 F.3d at 1005.

Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments is "not severe" if the evidence established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### 1.   Depression and anxiety

Plaintiff failed to meet her burden to present evidence of medical signs, symptoms, and laboratory findings that establish that her alleged depression and anxiety constituted medically determinable mental impairments. See 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). The only evidence Plaintiff cites in support of her contention that the ALJ failed to properly consider the severity of her depression and anxiety is Dr. Tran's statement in his physical RFC questionnaire that Plaintiff had been prescribed antidepressant and anxiety medications. (J. Stip. at 4, 12.) Apart from this brief reference, the record is devoid of any mental-health treatment notes or functional limitations opined by any medical professional resulting from Plaintiff's depression or anxiety. Thus, the logical inference is that even if Plaintiff did suffer from depression and anxiety, any symptoms were adequately controlled with medication. See 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ may consider effectiveness of medication in evaluating severity and limiting effects of impairment); Warre v. Comm'r of

23

1  Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)

2  ("Impairments that can be controlled effectively with medication

3  are not disabling for the purpose of determining eligibility for

4  [Social Security] benefits."). Further, Plaintiff testified that

5  the only impairments affecting her ability to work were related

6  to her feet and neck; she never mentioned any symptoms resulting

7  from depression or anxiety. (AR 32-56.) Accordingly,

8  substantial evidence supports the ALJ's determination that

9  Plaintiff's depression and anxiety did not constitute medically

10 determinable impairments. (AR 24); see Ukolov, 420 F.3d at 1004-

11 05.

12            2.  Obesity

13     As a general rule, an ALJ must determine the effect of a

14 claimant's obesity upon her other impairments and ability to

15 work. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003); see

16 also SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (requiring an

17 ALJ to consider the effects of obesity at several points in the

18 five-step sequential evaluation). An ALJ must "evaluate each

19 case based on the information in the case record," as obesity may

20 or may not increase the severity or functional limitations of

21 other impairments. SSR 02-1p, 2002 WL 34686281, at *6.

22     A review of the record reveals that in the proceedings

23 before the Commissioner, neither Plaintiff nor her attorney ever

24 claimed obesity constituted a disabling impairment or otherwise

25 resulted in any functional limitations. Rather, Plaintiff

26 claimed to be disabled as a result of neck and foot impairments,

27 and the ALJ found, at step two, that Plaintiff has severe neck

28 and foot impairments. (AR 21, 64, 69.) Plaintiff presented no

                          24

evidence that her obesity exacerbated her other impairments, limited her functioning, or impaired her ability to work, whether alone or in combination with her other alleged impairments.  The only medical evidence concerning Plaintiff's obesity was a statement from Dr. Sophon that Plaintiff was obese and an April 5, 2005 treatment note indicating that Plaintiff's complaints of foot pain might be related to her weight; but neither Dr. Sophon nor any other doctor ever discussed any limitations resulting from her obesity.  (AR 214, 369.)  Given the lack of any medical evidence that Plaintiff's obesity exacerbated her impairments or resulted in any functional limitation, as well as the failure of Plaintiff, who was represented by counsel, to claim to be disabled based on obesity, whether as an impairment or a source of functional limitations, the ALJ's failure to address Plaintiff's obesity at step two does not require reversal.  See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (finding no reversible error, notwithstanding ALJ's failure to consider obesity at step two, because, as in this case, there was little evidence that plaintiff's obesity exacerbated other impairments and plaintiff was represented by counsel).

### 3.  Shoulder and back impairments

Even assuming there is sufficient evidence in the record to show that Plaintiff suffered from right-shoulder impingement and a lower-back injury, the existence of either of these conditions alone did not constitute a severe impairment if it did not prevent Plaintiff from working.  See 20 C.F.R. § 404.1520(c) (severe impairment is one that "significantly limits [claimant's] physical or mental ability to do basic work activities").

25

Substantial evidence supports the ALJ's finding that Plaintiff's
right-shoulder and low-back pain were not severe.  With respect
to the right shoulder, as the ALJ noted, while Plaintiff
presented with right-shoulder pain in April 2008, by May 2008 she
reported feeling "1000 times better after the cortisone
injection."  (AR 23, 423-24, 428.)  There is no evidence in the
record that Plaintiff required further treatment for her right
shoulder or that any pain was not adequately controlled with
medication.  Moreover, regarding her low-back injury, while
Plaintiff reported injuring her lower back in a fall in 1990, she
continued to work until 2007.  (AR 367); Osenbrock, 240 F.3d at
1165-66 (ALJ properly considered fact that plaintiff worked six
years after injury in determining his functional capacity).  As
discussed above, at the hearing Plaintiff testified that the only
impairments limiting her ability to work resulted from her neck
and feet issues.  (AR 32-56.)  Indeed, even Plaintiff's counsel
conceded at the hearing that Plaintiff was "not really mentioning
the back although there were some complaints of it[.]"  (AR 60.)
Finally, Plaintiff fails to cite any medical opinions containing
functional limitations resulting from her right-shoulder or
lower-back injuries.  Based on the aforementioned evidence, the
ALJ reasonably concluded that Plaintiff's right-shoulder
impingement and low-back injury did not constitute severe
impairments because they did not have more than a minimal effect
on her ability to work.

     In any event, even if the ALJ erred by finding Plaintiff's
alleged shoulder and low-back impairments nonsevere, that error
was harmless because he considered these impairments when

1   determining her RFC at step four.  <u>See</u> <u>Lewis v. Astrue</u>, 498 F.3d
2   909, 911 (9th Cir. 2007) (failure to address particular
3   impairment at step two harmless if ALJ fully evaluated claimant's
4   medical condition in later steps of sequential evaluation
5   process); <u>see also</u> <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d
6   1050, 1055 (9th Cir. 2006) (ALJ's error harmless when
7   "inconsequential to the ultimate nondisability determination").
8   Specifically, the ALJ properly accounted for any work-related
9   impairments resulting from Plaintiff's shoulder and lower-back
10  pain by limiting her to occasional shoulder/overhead reaching and
11  postural activities and providing that she must be given normal
12  breaks from sitting.  (AR 22.)

13       Plaintiff is not entitled to remand on this ground.

14       C.   <u>The ALJ Did Not Err in Determining that Plaintiff's</u>
15            <u>Condition Did Not Meet or Equal a Listing</u>

16       Plaintiff contends that the ALJ "looked solely at Social
17  Security listing 1.00." (J. Stip. at 12.)  In particular,
18  Plaintiff maintains that the ALJ failed to

19            specify whether he was considering 1.02, 1.04 or
20            any of the other listings.  Further, in light of
21            plaintiff's other alleged impairments, there are
22            other listings that would come into play, including
23            12.04 and 12.06.

24  (<u>Id.</u>)

25       1.   <u>Applicable law</u>

26       At step three of the sequential disability-evaluation
27  process, the ALJ must evaluate the claimant's impairments to see
28  if they meet or medically equal any of the impairments listed in

27

1  the Listings.  _See_ 20 C.F.R § 404.1520(d); _Tackett v. Apfel_, 180

2  F.3d 1094, 1098 (9th Cir. 1999).  The claimant has the initial

3  burden of proving that an impairment meets or equals a Listing.

4  _See_ _Sullivan v. Zebley_, 493 U.S. 521, 530-33, 110 S. Ct. 885,

5  891-92, 107 L. Ed. 2d 967 (1990).  "To meet a listed impairment,

6  a claimant must establish that he or she meets each

7  characteristic of a listed impairment relevant to his or her

8  claim." _Tackett_, 180 F.3d at 1099.  "To equal a listed

9  impairment, a claimant must establish symptoms, signs and

10 laboratory findings 'at least equal in severity and duration' to

11 the characteristics of a relevant listed impairment, or, if a

12 claimant's impairment is not listed, then to the listed

13 impairment 'most like' the claimant's impairment." _Id._ (citing

14 20 C.F.R. § 404.1526).  Medical equivalence, moreover, "must be

15 based on medical findings"; "[a] generalized assertion of

16 functional problems is not enough to establish disability at step

17 three." _Id._ at 1100 (citing 20 C.F.R. § 404.1526).

18      An ALJ "must evaluate the relevant evidence before

19 concluding that a claimant's impairments do not meet or equal a

20 listed impairment." _Lewis v. Apfel_, 236 F.3d 503, 512 (9th Cir.

21 2001).  The ALJ, however, need not "state why a claimant failed

22 to satisfy every different section of the listing of

23 impairments." _Gonzalez v. Sullivan_, 914 F.2d 1197, 1201 (9th

24 Cir. 1990) (finding ALJ did not err in failing to state what

25 evidence supported conclusion that, or discuss why, claimant's

26 impairments did not satisfy a Listing).  Moreover, the ALJ "is

27 not required to discuss the combined effects of a claimant's

28 impairments or compare them to any listing in an equivalency

1  determination, unless the claimant presents evidence in an effort
2  to establish equivalence." Burch, 400 F.3d at 683 (citing Lewis,
3  236 F.3d at 514).

4          2.  Analysis

5      The ALJ's step-three determination is supported by
6  substantial evidence.  Plaintiff argues that the ALJ erred at
7  step three by failing to identify which Listing he was
8  considering or explain why he concluded that Plaintiff's
9  impairments did not meet or equal a Listing.  (J. Stip. at 12,
10 17.)  Although it is true that the ALJ found only that Plaintiff
11 "does not have an impairment or combination of impairments that
12 meets or medically equals one of the listed impairments in 20 CFR
13 Part 404, Subpart P, Appendix 1" and that "[n]o treating or
14 examining physician has recorded findings equivalent in severity
15 to the criteria of any listed impairment, including Listing 1.00,
16 nor does the evidence show medical findings that are the same or
17 equivalent to those of any listed impairment," without
18 specifically stating what evidence supported his conclusion (AR
19 21-22), elsewhere in the decision he dedicated three
20 single-spaced pages to summarizing and analyzing the medical
21 evidence and Plaintiff's testimony (AR 22-25).  Because those
22 findings were sufficient to support the ALJ's step-three
23 conclusion that Plaintiff's impairments did not meet or equal a
24 Listing, he did not err.  See Gonzalez, 914 F.2d at 1201
25 (rejecting claimant's argument that ALJ erred by failing to
26 discuss why he did not satisfy Listing because four-page
27 "evaluation of the evidence" was "an adequate statement of the
28 foundations on which the ultimate factual conclusions are based"

29

1  (internal quotation marks omitted)); see also Lewis, 236 F.3d at
2  513 (ALJ must discuss and evaluate evidence that supports
3  step-three conclusion but need not do so under specific heading).
4      Moreover, the ALJ "is not required to discuss the combined
5  effects of a claimant's impairments or compare them to any
6  listing in an equivalency determination, unless the claimant
7  presents evidence in an effort to establish equivalence."  Burch,
8  400 F.3d at 683 (citing Lewis, 236 F.3d at 514).  Here, Plaintiff
9  and her counsel never asked the ALJ to consider any Listings in
10 the 12 series, and Plaintiff has failed to point to any credited
11 evidence of functional limitations that would have affected the
12 ALJ's analysis, nor has she offered any plausible theory of how
13 the combination of her impairments equaled a Listing.  The ALJ
14 therefore did not commit reversible error by failing to make
15 additional findings at step three.
16      D.   The ALJ Did Not Err in Assessing Plaintiff's
17           Credibility
18      Plaintiff argues that the ALJ failed to provide clear and
19 convincing reasons for discounting her credibility.  (J. Stip. at
20 36-38, 44-45.)  Because the ALJ did provide clear and convincing
21 reasons supporting his evaluation of Plaintiff's testimony and
22 those reasons were supported by substantial evidence in the
23 record, reversal is not warranted on this basis.
24           1.   Applicable law
25      An ALJ's assessment of pain severity and claimant
26 credibility is entitled to "great weight."  See Weetman v.
27 Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
28 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

1  believe every allegation of disabling pain, or else disability

2  benefits would be available for the asking, a result plainly

3  contrary to 42 U.S.C. § 423(d)(5)(A)." <u>Molina v. Astrue</u>, 674

4  F.3d 1104, 1122 (9th Cir. 2012).   In evaluating a claimant's

5  subjective symptom testimony, the ALJ engages in a two-step

6  analysis.   <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1035-36.   "First, the

7  ALJ must determine whether the claimant has presented objective

8  medical evidence of an underlying impairment [that] could

9  reasonably be expected to produce the pain or other symptoms

10 alleged."   <u>Id.</u> at 1036 (internal quotation marks omitted).   If

11 such objective medical evidence exists, the ALJ may not reject a

12 claimant's testimony "simply because there is no showing that the

13 impairment can reasonably produce the *degree* of symptom alleged."

14 <u>Smolen</u>, 80 F.3d at 1282 (emphasis in original).   When the ALJ

15 finds a claimant's subjective complaints not credible, the ALJ

16 must make specific findings that support the conclusion.   <u>See</u>

17 <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010).   Absent

18 affirmative evidence of malingering, those findings must provide

19 "clear and convincing" reasons for rejecting the claimant's

20 testimony.   <u>Lester</u>, 81 F.3d at 834.   If the ALJ's credibility

21 finding is supported by substantial evidence in the record, the

22 reviewing court "may not engage in second-guessing."   <u>Thomas</u>, 278

23 F.3d at 959.

24          2.   <u>Relevant facts</u>

25     At the hearing, Plaintiff testified that she stopped working

26 at Costco in January 2007 because of symptoms related to

27 bilateral plantar fasciitis.   (AR 33.)   Plaintiff acknowledged

28 that her job duties at Costco likely led to her condition but

31

stated that she did not file a workers' compensation claim.  (AR

33-34.)  When the ALJ inquired why not, Plaintiff initially

responded that she was hoping to return to Costco because it was

a good employer but then said "there wasn't any reason" she

didn't file a claim and that "[t]o be honest," she was on state

disability at the time so she was seen by other doctors.  (AR 33-

35.)  She stated that since her state disability had run out, she

had been supported by her husband and earned some money caring

for her six-year-old granddaughter, of whom she had sole custody.

(AR 37-38.)  Plaintiff explained that she stopped working because

of the pain in her feet but developed pain in her neck in March

2008, after she had stopped working.  (AR 38-39.)  She explained

that her neck was currently the "bigger obstacle" to her working.

(AR 45.)  She testified that in March 2008, she "woke up and

[she] felt like [she] slept on her neck wrong so [she] didn't

know there was a problem."  (AR 39.)  She further indicated that

she had injured her neck in 2001, for which she filed a workers'

compensation claim, but the doctor who examined her in March 2008

did not feel it was related to that injury.  (Id.)  According to

Plaintiff, she would have been able to perform a "seated job"

between January 2007 and March 2008 but could not presently work

because her neck was in "constant acute pain."  (AR 39-40.)

Plaintiff also stated that she was initially treated

conservatively for her neck pain but had neck surgery in October

2008 that provided "immediate improvement but then it, the, the

symptoms started coming back."  (AR 40.)  She explained that she

had two additional herniated discs, "the C3 and 4 and C5 and 6."

(Id.)  In addition, Plaintiff testified that her neck pain had

gotten worse since the surgery and "goes down into the middle of [her] spine into her shoulder blades up into the skull of [her] head." (AR 41.) She acknowledged that her treating neurologist was aware of her two herniated discs, but only conservative treatment, consisting of "[p]hysical therapy, massages, [and] pain medication," had been recommended. (Id.) Plaintiff did note that her treating neurologist suggested more surgery might be a possibility but also said that she would be "exchanging one pain for another." (Id.) She indicated that her neurologist suggested she go to a specialist for a Botox injection to treat her neck pain but that her insurance would not cover it. (AR 46.)

Plaintiff testified that what she did on a daily basis was dictated by her pain, for which she took a pain medication, an antiinflammatory, and a muscle relaxer and used a pain patch. (AR 42-43.) She indicated that the pain medication sometimes caused the pain to "subside," but that at other times she must do additional care, like "laying on a heating pad or ice packs" several times a day as needed. (AR 43.) She had trouble falling and staying asleep and woke three to four times a night, which caused her to need naps during the day. (AR 44.) She estimated that since March 2008, she spent at least 50% of the day lying down. (AR 48.) Plaintiff explained that she did not do any activities away from home except go to medical appointments, but she was able to drive and did drive her granddaughter to school. (AR 47.) She later admitted that she also occasionally grocery shopped and attended church. (AR 48, 51.) Finally, Plaintiff also stated that she cooked, got her granddaughter ready in the

morning and drove her to school, and read the Bible for about
three hours a day.  (AR 49-51.)

     3.   Analysis

     The ALJ evaluated Plaintiff's credibility as follows:

> The claimant's testimony as well as the statements in the
> exhibits are only credible to the extent she is able to
> perform the residual functional capacity herein.  While
> the claimant alleges she is unable to perform work
> activity, her records do not support this allegation.
> The claimant stopped working due to plantar fasciitis
> that was a work related injury but she never filed a
> workers' compensation claim.  Instead, she did not go
> back to work.  A year later, she injured her neck which
> ultimately required surgery. Currently she drives, takes
> care of a 6 year old granddaughter, does some grocery
> shopping, cooks, attends church, and reads the bible for
> about 3 hours a day.  She testified her doctor wants to
> fuse the level above and below her neck but that is
> supported [sic] by her medical records.

(AR 23.)

     Reversal is not warranted based on the ALJ's alleged failure
to make proper credibility findings or properly consider
Plaintiff's subjective symptoms.  The ALJ partially credited
Plaintiff's allegations in assessing an RFC more restrictive than
that opined by Dr. Sophon.  (AR 22, 25.)  To the extent the ALJ
did reject Plaintiff's allegations, he provided clear and
convincing reasons for doing so.  As the ALJ noted, Plaintiff's
treatment records "show substantial improvement from March 1,

2008 to the present." (AR 23.)  Her plantar fasciitis improved

after January 2008, no evidence showed she needed treatment after

that time for foot pain, and her feet were normal during her

January 2010 consultative exam.  (AR 179-209, 367-71.)  In

addition, her neck pain improved after her October 2008 surgery;

the most recent record from Dr. Rodriguez, her treating

neurologist, in April 2010 recommended only conservative

treatment and no future surgeries.  (AR 376-77.)  Based on this

evidence, the ALJ was entitled to discount Plaintiff's subjective

testimony to the extent it conflicted with the medical record.

See Carmickle, 533 F.3d at 1161 ("Contradiction with the medical

record is a sufficient basis for rejecting the claimant's

subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in

determining credibility, ALJ may consider "whether the alleged

symptoms are consistent with the medical evidence"); Burch, 400

F.3d at 681 ("Although lack of medical evidence cannot form the

sole basis for discounting pain testimony, it is a factor that

the ALJ can consider in his credibility analysis."); Kennelly v.

Astrue, 313 F. App'x 977, 979 (9th Cir. 2009) (same); Tommasetti

v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer

that claimant's "response to conservative treatment undermines

[claimant's] reports regarding the disabling nature of his

pain").

        The ALJ also properly rejected Plaintiff's subjective

allegations on the basis that she did not file a workers'

compensation claim after leaving work in January 2007 because of

plantar fasciitis, a work-related injury.  (AR 23.)  While

Plaintiff initially testified that she did not file a claim

because she hoped to return to work, she then stated that there
was no reason she did not file a claim and conceded that from
January 2007 to March 2008, she would have been able to perform a
"seated job." (AR 33-34, 45, 47, 53-54.)  The ALJ reasonably
considered Plaintiff's failure to file a claim as undermining her
allegations that she was unable to work.  See Turner v. Comm'r of
Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (in evaluating
plaintiff's testimony, the ALJ may use "'ordinary techniques of
credibility evaluation'" (quoting Smolen, 80 F.3d at 1284)).

      Moreover, as the ALJ noted, Plaintiff admitted that she was
able to do a wide variety of daily activities, including driving,
taking care of her six-year-old granddaughter, occasional grocery
shopping, cooking, attending church, and reading the Bible about
three hours a day.  (AR 23, 42-51.)  That Plaintiff's allegations
of disabling pain were inconsistent with her daily activities was
a valid reason for the ALJ to discount her testimony.  See Bray
v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir.
2009) (ALJ properly discounted claimant's testimony because "she
leads an active lifestyle, including cleaning, cooking, walking
her dogs, and driving to appointments"); Molina, 674 F.3d at 1113
("Even where [claimant's] activities suggest some difficulty
functioning, they may be grounds for discrediting the claimant's
testimony to the extent that they contradict claims of a totally
debilitating impairment.").

      Because the ALJ gave clear and convincing reasons for his
credibility finding and those reasons were supported by
substantial evidence, the Court "may not engage in
second-guessing" the ALJ.  Thomas, 278 F.3d at 959 (citation

omitted).  Plaintiff is not entitled to reversal on this claim.

E.   The ALJ Did Not Err in Failing to Consider Whether
     Plaintiff Was Disabled Under the Medical-Vocational
     Guidelines

Plaintiff contends the ALJ's RFC assessment that Plaintiff could perform a limited range of light work was "essentially" a finding that she could perform sedentary work and thus the ALJ should have determined that Plaintiff was disabled under the Medical-Vocational Guidelines ("the Grids").  See Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (explaining that Grids are used to assist in step-five determination of whether significant number of jobs exist in national economy that claimant can perform); 20 C.F.R. § 404.1569.  Plaintiff's contention lacks merit.  Because the ALJ properly found, at step four, that Plaintiff could perform her past relevant work, he was not required to go onto the next step and consider whether Plaintiff was disabled under the Grids.  See 20 C.F.R. §§ 404.1520(f) (explaining that the ALJ's inquiry is complete if he determines at step four that plaintiff is not disabled); 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled.  We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.").  Plaintiff also argues that the ALJ should have applied the Grids because Plaintiff's past work "is best described as a 'composite job.'" (J. Stip. at 36.)  But the VE testified that Plaintiff's job at

37

Costco was "really two different jobs" and said that Plaintiff
could perform one of them.  (AR 56-57.)  This is in fact exactly
like the case cited by Plaintiff, <u>Castillo v. Astrue</u>, No. CV 10-
2584 JC, 2010 WL 4916608, at *4 n.3 (C.D. Cal. Nov. 3, 2010), in
which the Court found an argument almost identical to Plaintiff's
"unavailing."  Moreover, because the ALJ properly rejected the
opinions of Drs. Landrey and Tran, the ALJ's step-four finding
was proper regardless of whether Plaintiff's past job could be
characterized as a composite job.  Therefore, Plaintiff is not
entitled to reversal on this basis.

**VII. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four
of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered
AFFIRMING the decision of the Commissioner and dismissing this
action with prejudice.  IT IS FURTHER ORDERED that the Clerk
serve copies of this Order and the Judgment on counsel for both
parties.


DATED: June 5, 2013

_JEAN ROSENBLUTH_
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9]     This sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."